JOHN KAEDING AND AUGUSTA KAEDING V. BENDIX JOACHIMSTHAL.

*Homestead—Abandonment—Intention.*

1. Absence from a homestead. for six years will not deprive the owners of the protection of the statute, if during such absence they had a continuing intent to return to and occupy said homestead.[1]

2. The question of their good faith is one of fact; citing *Hoffman v. Buschman,* 95 Mich. 538.

Appeal from Wayne. (Hosmer, J.) Argued October 31, 1893. Decided December 8, 1893.

Bill to enjoin summary proceedings to recover the possession of land. Defendant appeals. Decree affirmed. The facts are stated in the opinion.

*John Miner,* for complainants.

*Griffin & Warner,* for defendant.

---

[1] For cases bearing upon the question of the *abandonment* of a homestead, see:

1. *Bunker v. Paquette,* 37 Mich. 79, holding that a dwelling-house on land occupied as a homestead is exempt from execution while being removed by the owner to another parcel of land; and that the fact that he and his family had left the house, leaving a

HOOKER, C. J. The complainants file a bill to enjoin proceedings before a circuit court commissioner to obtain possession of premises claimed as a homestead by complainants. The defendant claims title under an execution sale, the validity of which seems to depend upon this question of homestead.

Mrs. Kaeding was carrying on the millinery business in 1883, when the premises were purchased by complainants for a home. In December, 1884, they occupied the premises. In 1885, they moved to another part of the city (Detroit) to resume the millinery business, owing to the inability of the husband to work. They remained there four years, and·

portion of the furniture therein, and had been living in a rented house at some distance therefrom for two years prior to the levy, would not render the house subject to execution, unless it further appeared that he had abandoned it as a homestead.

2. *Showers v. Robinson*, 43 Mich. 502, 513, holding:

*a*—That a widow is not estopped from recovering possession of the homestead owned by her deceased husband, which consists of two parcels, by having one parcel set off to her for her dower, and removing therefrom upon the advice of the judge of probate and the administrator, who had taken possession of the remaining parcel, into a neighboring village, unless it further appears that she intended to abandon her homestead rights in the land.

*b*—That an abandonment by the widow would not take from the minor children the right to return and occupy the land as a homestead, and, if she refused to bring suit to recover possession, a guardian might recover on their behalf.

3. *Pardo v. Bittorf*, 48 Mich. 275, holding that a husband does not lose his homestead rights by his wife's removing, without his consent, into another house, it appearing that on her refusal to return he took his own bed back with the avowed purpose of keeping his residence in the old homestead, and continued to occupy it in whole or in part, and that, while renting a portion of the house, and not invariably remaining in it, especially when not well, he never ceased to retain a possession or to claim it as his homestead.

4. *Griffin v. Nichols*, 51 Mich. 575, holding that the change worked in the occupancy of a homestead by the separation of the husband and wife and her application for a divorce, they having no children, and his admitting a man into the house and receiving board from him for a few months, after which the place was without a family for a time, and was then occupied by another man, at the commencement of which latter occupancy the husband removed his bed, but during all of the time regarded the place as his home, and divided his time between laboring for others about the neighborhood and working for himself on the farm, and from time to time repaired to it for work, and sometimes to sleep or eat, is a circumstance to be considered with others on the question of abandonment, but is not of itself conclusive.

from there went to Michigan avenue, where the millinery business was carried on for two years. The husband recovered after two years' sickness, and worked during the last four years. After filing this bill the complainants again occupied the premises.

The premises became a homestead by the first occupancy, and the complainants testify that it was their intention to return at some future time. While the parties had resided elsewhere for a long period, there is testimony from both husband and wife of a continuing intent to return to their home after the object of their temporary absence should have been attained. Under our decisions, such intent, if it

5. *Karn v. Nielson*, 59 Mich. 380, holding that temporary absence from a dwelling-house, built on a parcel of land within the statutory limits as to acreage and value, and occupied as a homestead for a time, will not subject the property to levy and sale on execution, it appearing that the owners, though not actually living on the premises for a considerable time, left some household goods in the house during their absence, which was rendered necessary by poverty, but that they always regarded the land as their homestead, and honestly purposed returning and occupying it as such.

6. *Earll v. Earll*, 60 Mich. 30, holding that temporary absence of the owner from his homestead, leaving it in the occupation of a tenant, will not deprive it of its·exempt character, if he intends to return and continue it as such homestead; and it is not essential that his wife live with him thereon, continuously.

7. *Stanton v. Hitchcock*, 64 Mich. 317, holding that the character of any property as a homestead depends on actual intention, and it may·be entirely destroyed by a removal of residence, after which the property stands liable to sale or any other disposal at the pleasure of the owner; also *Black v. Singley*, 91 Mich. 50, and *Hoffman v. Buschman*, 95 Id. 538, holding the same doctrine.

*Necessity of actual occupancy:*

1. *Bowles v. Hoard*, 71 Mich. 150, holding that a party claiming unoccupied land to be exempt from execution as a homestead must show an intention on his part to occupy it as such, and that such intention existed prior to and at the time of such levy; and if it was conceived after the levy, and for the purpose of defeating the lien thereby created, it cannot be upheld, although a dwelling is erected or moved upon the land, and occupied by the owner and his family, after such levy and before sale.

2. *Reske v. Reske*, 51 Mich. 541, holding that a city lot, purchased by a single man in contemplation of his marriage, and with the intention of making it a homestead, will be exempt from execution, even before any dwelling is erected on it, if he and his wife have inclosed, improved, and used it with the constant purpose of making it their home as soon as their means would permit; also *Deville v. Widoe*, 64 Mich. 593, to the same effect.

3. *Avery v. Stephens*, 48 Mich. 246, holding that a debtor who

existed, protected the homestead. *Riggs v. Sterling*, 60 Mich. 643; *Evans v. Railroad Co.*, 68 Id. 602; *Bunker v. Paquette*, 37 Id. 79; *Earll v. Earll*, 60 Id. 30; *Pardo v. Bittorf*, 48 Id. 275; *Karn v. Nielson*, 59 Id. 380; *Beecher v. Baldy*, 7 Id. 488. The good faith of the complainants is a question of fact (*Hoffman v. Buschman*, 95 Mich. 538), and we feel warranted in finding that the homestead was not abandoned. The circuit judge, who saw the witnesses and heard their testimony, reached this conclusion, which is an assurance of the justice of this view of the case.

Decree affirmed.

The other Justices concurred.

---

purchases a parcel of land, and puts a third person in possession to care for and till it for him, cannot defeat the lien of an attachment subsequently levied on the land, by taking possession and claiming it as his homestead before the levy of the execution issued on the judgment recovered in the attachment suit.

4. *Mills v. Hobbs*, 76 Mich. 122, holding that where a married woman purchased a vacant, unimproved village lot on contract, with the intention of occupying it as a homestead for herself and husband, which she evidenced by planting shade trees in front, along the street line, and by contracting, about 17 months after such purchase, for the erection of a dwelling-house thereon (neither she nor her husband owning any other real estate in the village), the premises will be treated as her homestead.

5. *Evans v. Calman*, 92 Mich. 427, holding that where a mother and daughter own a lot on which there are two houses, both of which are rented at the time of the levy of an execution issued on a judgment against the mother and her husband, who reside elsewhere, the mother cannot change the character of the property to a homestead by saying that she intends at some future time to occupy it as a home.

For an exhaustive note on general subject of homesteads, see *Wylie v. Grundysen*, 19 L. R. A. 33.