HITCHCOCK *v.* MISNER.

Homestead—Abandonment—Evidence of Intention.

Complainant filed a bill to set aside an attachment levy upon property alleged to be his homestead. It appeared that he had vacated the premises a year and a half before the levy, and, with his family, had removed to a house occupied by his father, and had accepted from the latter a deed to the premises mentioned. Complainant claimed that the removal was necessary on account of his father's ill health, and was for a temporary purpose; that he never intended to abandon his homestead; that he had agreed to sell the property deeded to him by his father, and to pay the latter the surplus remaining after reimbursing himself for certain expenditures. *Held,* that the facts shown did not necessarily constitute an abandonment of the homestead so as to render it subject to attachment.

Appeal from Muskegon; Russell, J. Submitted October 20, 1896. Decided December 18, 1896.

Bill by Joseph A. Hitchcock against Porter P. Misner and others to set aside an attachment levy. From a decree for complainant, defendants appeal. Affirmed.

*Nelson DeLong,* for complainant.

*Brown & Lovelace,* for defendants.

MOORE, J. This is a proceeding to set aside an attachment levy made by defendants upon one-half of a city lot in Muskegon. The record shows that the attachment was made October 5, 1895, by creditors of a firm of which complainant was a member. This half lot, which was known as "No. 12 Muskegon Avenue," was bought by complainant, who was then a married man, in 1890. It was occupied by himself and family for about $3\frac{1}{2}$ years. About a year and a half before the levy, complainant and his family moved to No. 53 Muskegon avenue, into a house

then occupied by his father and his family, and continued to reside there until after the levy upon the property at No. 12 Muskegon avenue was made. At the time complainant moved to No. 53 Muskegon avenue, his father deeded the property located there to him. There was a mortgage upon the property of about $800, and some back taxes. It is the claim of complainant that he never intended to abandon his homestead at No. 12, but that he and his family always regarded it as his homestead; that he moved to No. 53 to enable him to care for his father, who was very old,—the house at No. 12 not being large enough to accommodate both families. It is also his claim that, when No. 53 was deeded to him, his father was not able to pay the mortgage and taxes, and was afraid he would lose the property. He also claims that the arrangement between his father and himself at the time of the making of the deed was that the complainant should pay the mortgage and taxes, and that, when he could sell the property without sacrificing it, he was to do so, and, after reimbursing himself, was to pay the surplus to his father; that he expected to make the sale, and to carry out his agreement. It was the claim of the defendants that, when complainant moved to No. 53 Muskegon avenue, he intended to abandon his home at No. 12 Muskegon avenue, and that his return to No. 12 was because he was afraid that his creditors would levy upon it, and was for the purpose of defrauding his creditors; that by giving mortgages to his mother-in-law upon both pieces of property for an amount largely in excess of his debt to her, which mortgages were signed by complainant's wife, he has shown his purpose to defraud his creditors, and that these acts of the complainant and his wife characterize them as persons whose testimony ought not to be believed. The case was tried in open court, and the circuit judge granted a decree according to the prayer of the bill. The complainant, his wife, and his father all gave testimony tending to establish the truth of complainant's claim. The defendants controverted this testimony.

In *Hoffman* v. *Buschman*, 95 Mich. 540, Justice HOOKER held that "the retention of homestead rights, though the party live elsewhere temporarily, is possible. It is largely a matter of continuing intent, and is a fact to be proved like any other fact." In *Kaeding* v. *Joachimsthal*, 98 Mich. 78, it was held, in a case where the parties had been absent from the homestead six years, that, where there was a continuing intent to return to their home after the object of their temporary absence should have been attained, such intent protected the homestead. The cases are collated in the decision just quoted. See, also, the case of *Myers* v. *Weaver*, 101 Mich. 477. The circuit judge had the witnesses before him. While there were some things done by the complainant, in his effort to keep his creditors from reaching his property, that are open to criticism, we are not inclined to say that the conclusion of the circuit judge that the property was exempt from levy is erroneous.

The decree is affirmed, with costs.

The other Justices concurred.