ELIAS KIMBALL AND LUELLA KIMBALL, APPEL-
LANTS, *v.* ORANGE J. SALISBURY AND THOMAS
P. LEWIS, RESPONDENTS.

1. *Homestead—Exemption Rights—Waiver.*

Under section 3429, Comp. Laws 1888, as amended by section 11, c. 71, p. 215, Sess. Laws 1896, the homestead exemption is not a privilege conferred upon the head of the family, but an absolute right, intended to secure and protect the home against creditors, as a means of support to every family in the state, and no waiver of the homestead right could affect the interest of the wife or children composing the family.

2. *Same—Homestead—Value Limit.*

When the homestead consists of one or more pieces of land, is within the value limited by statute, and is established by selection or occupancy, the constitution and statute enacted under it are a positive prohibition against levy and sale thereof by creditors of the owner of the homestead.

3. *Homestead—Occupation—Selection—Notice to.*

If the premises occupied by the debtor as a homestead are of less value than the limit fixed by the statute as exempt to the head of the family, they are exempt from execution without any necessity on the part of the debtor to formally select the land

as a homestead; and any sale thereof upon execution will not affect the title thereto, or deprive the actual owner thereof of his homestead right there n. In such case the selection is sufficiently manifest by ownership, residence, use, or occupation, and a sale thereof, under execution, may be set aside, as a cloud upon the title.

4. *Same—Sale—Execution—Selection of Homestead.*

If the selection of a homestead be made before execution, levy, and sale of more than the amount in value, as limited by statute, or it thereafter becomes enhanced in value, such homestead is still liable for the debt of the execution creditor to the amount in value in excess of the limit exempt by statute. In such case, or if the homestead consists of more than one piece of land, neither of whi h exceeds the exemption limit, it is optional with the debtor which piece he may select and retain as exempt in full, or which piece or pieces may be partially or wholly sold. But the homestead cannot be sold unless the officer making the sale receive a bid greater than the amount exempted by statute if contained in one parcel. If the owner or officer making the sale cannot agree as to the value of partition thereof, then appraisers are to be selected before sale. The debtor is not required to take steps to select and preserve the homestead exemption against the invasion of a creditor before such levy, and he is called upon to make a selection of his homestead. If the homestead consists of more than one piece of land, jointly exceeding the exemption limit, the selection must be made as provided by statute. In such case the debtor is entitled to notice, before sale, in order to be able to select his appraisers in case of disagreement between himself and the officer making the sale.

5. *Residence—Selection—Homestead—Written Declaration.*

The statute does not contemplate that the debtor shall reside on each of several pieces of land claimed by him as a homestead, and within the exemption limit in value, in order to secure its exemption. Nor was it contemplated that the head of the family must make a written declaration announcing the selection of any particular piece of land as his homestead at any time before execution levy thereon, in order to protect his homestead right therein,

6. *Absence from Residence by Homesteader—Abandonment of Homestead.*

    The continual absence of the homesteader from his residence for a year at a time, when attending to his occupation out of the state, but with a bona fide intention to return thereto, does not constitute an abandonment of the homestead right.

7. *Residence Upon Homestead.*

    In order to claim a homestead under the statute, it is not necessary that the debtor reside upon the land claimed as exempt, provided the land be used for the family support, and as the whole or part of the homestead.

8. K. was the owner of only two separate unimproved lots of land in Salt Lake City, of a joint value of less than the exemption allowed by law; and during his absence from the state, with his family, for nearly a year, upon a mission, the lots were sold upon execution, to satisfy a judgment against him, without any notice to him of the levy or proposed sale. One of the lots adjoined the residence of his mother, where he and his family dwelt when in the city, and had no building thereon, except an outhouse. This lot and outhouse were used in connection with the residence as a home and means of support of his family. The other lot was also used as a means of family support, but was located in another part of the city. *Held,* that as K. had no opportunity of selecting or claiming his homestead until after the sale thereof on execution to the plaintiff, and the officer making the sale having made no demand upon K. to select his homestead or appoint appraisers, but having sold the land without notice, a court of equity should set aside the sale as a cloud upon the homestead right of K.

9. Under Const. art. 22, § 1, and under Sess. Laws 1896, p. 215, c. 71, § 11, mere ownership of vacant and unoccupied land is not sufficient to entitle the owner to an exemption thereof from sale on execution, without selection as a homestead and notice thereof before sale to the judgment creditor or officer making the sale. Per Bartch J., dissenting.

10. Where land is owned and occupied by the judgment debtor and his family, such ownership and occupancy will be notice to all the world of their homestead rights; so, likewise, where

land is used by the judgment debtor and his family so openly and notoriously with the homestead as to impart notice to the public that it is being used as a part of the homestead. In neither of such cases will any other selection be necessary to protect the homestead rights of the judgment debtor. Per Bartch, J., dissenting.

11. Where land is vacant, separate, and apart from the homestead, and the owner or claimant of the homestead stands by, and permits the judgment creditor to sell the property on execution, without notifying him that he claims it as a homestead, he waives his homestead rights thereto, and cannot after sale assert them. Per Bartch, J., dissenting.

12. The owner of vacant and unoccupied land, who claims the same as a homestead, must, in order to protect his homestead rights, in some way notify his judgment creditor or the officer who is proceeding under the execution, before sale, of the fact that he so claims it. Per Bartch, J., dissenting.

(No. 938.    Decided June 30, 1898.)

Appeal from district court, Salt Lake county; Ogden Hiles, *Judge.*

Action by Elias S. Kimball and Luella W. Kimball against Orange J. Salisbury and Thomas P. Lewis. From a decree for defendants, plaintiffs appeal. *Reversed.*

*Young & Moyle,* for appellants:

It is not necessary that the exemptionist own the land in which he actually resides to make land used in connection with his residence a part of the homestead. He may rent lands; he may rent a house and use his own land in connection with it and his land is a part of his homestead and is exempt; or he may live on his wife's land, and his lands used in connection with the residence makes a part of his homestead and is exempt. *Bennett v. Baird,* 81 Ky. 554; *Summers v. Spriggs,* (Ky.) 35 W. Rep.

1033; *McClemaghan* v. *McEachern*, 25 E. 296; *Rogers* v. *Savings Bank*, 63 N. H. 428; Waples on Homestead and Exemptions, p. 186; *King* v. *Sturges*, 56 Miss. 606; *Allen* v. *Chase*, 58 N. H. 419; *Cole* v. *Bank*, 59 N. H. 53, 321.

Temporary absence is no abandonment and loses the exemptionist no right. Abandonment is a question of intention. And the claimant's uncontradictory statement of intention is conclusive. *McMillan* v. *Warner*, 38 Texas 410; Thompson on Homestead and Exemptions, sec. 272; *Robinson* v. *Swearington*, 17 S. W. Rep. 356; *Karding* v. *Joachinsthal*, 89 Mich. 78; *Benbow* v. *Boyer*, (Ia.) 56 N W. R. 544.

In order for land to be a part of a homestead and exempt, it is not necessary that the house should be situated immediately upon it; it is enough if it is used as a part of the homestead, for out-houses or yard or garden, if it comes within the amount in value exempted. Compiled Laws of Utah 1898, sec. 3429 subd. 11; Thompson on Homesteads and Exemptions, sec. 100; *Gregg* v. *Bostwick*, 33 Cal. 227; *Clark* v. *Shannon*, 1 Nevada 477; *Wilburn Wagon Co.* v. *Kennedy*, 75 Tex. 212; *King* v. *Sturger*, 56 Miss. 606; Waples on Homesteads and Exemptions, p. 185, sec. 6 and p. 149.

The judgment creditor is presumed to desire his homestead exempt, and need make no claim to the sheriff or to any one else for it. The law casts it upon him, and the sheriff must take notice of the existence of the debtor's homestead and protect it. Such has been held by the courts of Missouri, Wisconsin, New Hampshire, North Carolina, Iowa, Illinois, Arkansas, Nevada, Texas and Massachusetts. *Folger* v. *Montgomery*, 54 Mo. 584; *Scofield* v. *Hopkins*, 61 Wis. 372; *Willis* v. *Matthews*, 46 Tex. 483; *Selegson* v. *Collins*, 64 Tex. 314; *Barney* v. *Leeds*, 51 N. H.

293; *Abbott* v. *Cromartie*, 72 N. C. 292; *Lambert* v. *Kinney*, 74 N. C. 350; *Lute* v. *Reilly*, 65 N. C. 20; *Taylor* v. *Rhyne*, 65 N. C. 531; *Vannoy* v. *Haymore*, 71 N. C. 128; *Helfenstein*, v. *Cave*, 6 Iowa 677; *Hoskins* v. *Litchfield*, 31 Ill. 137; *Pardie* v. *Lindley*, 31 Ill. 187; *Moore* v. *Titman*, 33 Ill. 368; *Hughes* v. *Watt*, 26 Ark. 228; *Goldman* v. *Clark*, 1 Nev. 611; *Hubbell et al.* v. *Canady*, 58 Ill. 425; *Swan* v. *Stevens*, 99 Mass. 7; see *Grosholz* v. *Newman*, 21 Wallace 486.

Wherein the supreme court of the United States says that the place "must be actually used or *manifestly intended to be used as a part of the home.*"

In *Hanlon* v. *Pollard*, 17 Neb. 368: "Where the statute provides for the exemption of the homestead in which the claimant resides," it is held exempt if the claimant has the "bona fide intention of presently residing upon it or residing upon it as soon as some temporary obstacle to it can be removed or some necessary preparation for residence can be made."

To the same effect are the following cases: *Dobkins* v. *Kuykendahl*, 16 S. W. Rep. 743; *Schofield* v. *Hopkins*, 61 Wis. 370, 372; *Deville* v. *Widoe*, 64 Mich. 593; *Robinson* v. *Swearington*, 17 S. W. Rep. 365; *Resky* v. *Resky*, 51 Mich. 541; *Van Rutcliff* v. *Call*, 72 Texas 491.

A garden or pasture, or even a farm not contiguous to the actual residence, may be a part of the homestead if it comes within the exempted value. *Buxton* v. *Derrborn*, 46 N. H. 43; *Hubbell* v. *Canady*, 58 Ill. 425; *Hastie* v. *Kelly*, 57 Vt. 291, 294; *Aldrich* v. *Thurston*, 71 Ill. 324; *Stevens* v. *Hollingsworth et al.*, 74 Ill. 207; *Houston* v. *Winter*, 44 Tex. 597; *West River Bann* v. *Jail*, 42 Vt. 27.

The homestead claimant can either set aside an attempted sale of his homestead or may defend against an action of ejectment when brought. *Green* v. *Marks*, 25 Ill. 204; *Barrett et al.* v. *Wilson*, 102 Ill. 302; *Conklin* v.

*Foster,* 57 Ill. 104; *Goldman* v. *Clark,* 1 Nev. 516; *Herrington* v. *Ullerbeck,* 57 Mo. 519; *Deffiliz* v. *Piro,* 46 Cál. 289; Waples on Homestead and Exemptions, p. 740; Thompson on Homesteads and Exemptions, sec. 686; *Gallacker* v. *Keller,* (Tex.) 30 S. W. R. 248.

*W. C. Hall,* for respondent.

This action was brought to quiet title in two certain pieces of land in Salt Lake City, claimed by plaintiffs·to be their homestead, which was levied upon and sold under execution issued upon a judgment against Elias S. Kimball, in favor of defendant Salisbury. The judgment was obtained upon a promissory note upon which Elias S. Kimball was indorser, in November, 1896, and the sale was made thereon on the 8th day of March, 1897. Defendant Salisbury was the purchaser, and received a certificate· of sale. Before the deed thereof was delivered, this proceeding was commenced, to enjoin the making or delivery of the deed upon such sale, and to remove the cloud from the title. The property consists of two separate pieces of land in Salt Lake City. One of them is a vacant piece of ground 10 rods by 55 feet, located on lot 5, block 39, plat A, of the value of $1,000; the other, a vacant piece of ground on lot 4, block 138, plat A, Salt Lake City, of the value of $1,200, mortgaged in the sum of $500. The plaintiff alleges, and the testimony tends to show, that plaintiffs were and had been at the time and for eight years prior to said judgment, execution, levy, and sale, husband and wife, and that they resided during all that time in Salt Lake City, Utah, and occupied said land ·first described as a homestead; that they had three children under the age of seven years; that the wife and children were dependent upon said Kimball for their support; that the said Kimball inherited said two pieces

of land from his father, with other lands in June, 1868, and that said land had been used by said Kimball as a homestead by himself and family since that time, and as a garden and orchard and for outhouse purposes in connection with his homestead, as a part thereof, ever since he acquired it; that he had no notice or knowledge of said levy or attempted sale until after it was made, and not until September, 1897; that during the last four years he had been engaged as a missionary in the Southern states, and that his wife and children accompanied him in his labors when away from Utah; that during said period he would return to Salt Lake, and live in the house adjoining said land one month of each of said years, using said land as a homestead during said period; that the first piece of land named consisted of 9 rods by 55 feet, and was part of a larger piece of land, consisting of 9 by 10 rods, owned by his father, which descended to himself and brother; that in 1880 plaintiff and his brother constructed a house upon a portion of this 9 by 10 rods, covering 3 by 10 rods on the east, as a home for their mother and themselves, and that all the parties lived therein as their dwelling until their mother's death, two years before the commencement of this suit; that this 3 by 10 rods of ground where the house was built was conveyed to the mother prior to her death; that since the mother's death, when in Salt Lake, plaintiffs continued to live in the same house, and occupy the land in question, with and as part of his homestead, and in connection with the residence, as a garden, orchard, and outhouses for family purposes and support, and that he owned no other residence or home since his marriage; that the 9 by 10 rods was all the time surrounded by a fence, and was not divided or apportioned off from the house; that the plaintiff owned 3 by 10 rods of the remaining 6 rods, his brother owning the balance

of the lot; that plaintiff always intended the 3 by 10 rods for a homestead, and intended to build a house upon it and live thereon when able to do so; that he had no other home; that the other piece was used for the production of vegetables, and as a garden for the use and benefit of the family; that in October, 1896, plaintiff left Salt Lake City with his family, and went on his mission to the Southern states; that, prior to the execution and delivery of the deed by the sheriff, plaintiff notified the parties in writing that he claimed the property as a homestead, and also notified the defendants, in writing, of his claim, and forbade the execution and delivery of the deed; that in January, 1898, plaintiff filéd his declaration of homestead with the recorder of deeds, claiming said property as a homestead. The defendants offered no evidence except the execution, answer, and return. Thereupon the court found the facts in favor of the defendants, and made its decree accordingly. From this decree, this appeal is taken.

MINER, J. (after stating the facts):

Section 3429, Comp. Laws Utah 1888, as amended by section 11, c. 71, p. 215, Sess. Laws 1896, provides: "If the debtor be the head of a family, there shall be a further exemption of a homestead, to be selected by the judgment debtor, consisting of lands and appurtenances, which lands may be in one or more pieces in different localities of the same county in which the judgment debtor resides, or in different counties of the state, together with the appurtenances and improvements thereon not exceeding in value the sum of fifteen hundred dollars for the judgment debtor, and the further sum of five hundred dollars for his wife, and two hundred and fifty dollars for each other member of his family. Such exemptions shall con-

tinue after the death of the judgment debtor for the benefit of the wife and minor children surviving. *  *  * If the homestead selected by the judgment debtor is of greater value than is exempted under this section, and if it consist of two or more separate pieces of land and appurtenances, neither of which is of the value of the amount of the exemption, it shall be optional with the judgment debtor which piece or pieces of land he will select and retain in full and which piece or pieces shall be partitioned or sold. *  *  * Provided, that the homestead shall not be sold if the officer does not receive a bid for a greater amount than the value of the homestead exempted in this section if the exempted lands or improvements be in one piece, but if said homestead exempted be in more than one piece, then the officer and the judgment debtor shall proceed as in case of a disagreement between them on the value of the homestead and determine the value of each piece of property exempted, and such property shall not be sold unless the officer shall receive a bid for each piece greater than the appraised value thereof. *  *  * If the officer having the execution and the judgment debtor cannot agree as to the value of the homestead, or the partition thereof, *  *  * the officer shall select one person and the judgment debtor another person, *  *  * who shall appraise the same. *  *  * If the disagreement relates to the value of the homestead, or to the partition thereof, the appraisers shall report to the officer their appraisal of the property selected for the homestead. If the debtor elect to have the property partitioned, it shall be the duty of the appraiser to set apart such homestead as the judgment debtor shall elect and be entitled to under the provisions of this section." By these provisions of the statute the legislature made a radical change in the law with reference to homesteads. Under this stat-

ute the judgment debtor may select a homestead consist-
ing of land and appurtenances in one or more pieces in
different localities of the same or different counties in
the state, not exceeding in value $1,500 for the judgment
debtor, $500 for his wife, and $250 for each other member
of his family.

Under the facts in this case, if entitled to any exemp-
tion, the judgment debtor would be entitled to a home-
stead exemption for himself and family of lands and ap-
purtenances, to be selected by him, to the value of $2,700,
whether the same were actually occupied by him as a
residence and home in the same locality or not, provided
the same do not exceed the statutory limit in value, and
were used by him as a homestead and as a means of main-
taining and supporting himself and family. The object
of the statute was to foster families as factors and bene-
ficiaries of society, and thus promote the general welfare,
and secure their permanency, and protect their home-
steads from forced sale, as far as it could be done without
injustice to others. These statutes were not enacted as
poor laws, to save the property of the impecunious and
slothful from the payment of their just debts, but to pro-
tect the family homestead of all classes of people, with-
out reference to pecuniary responsibility of the owner.
Under this statute, the head of the family, whether in
affluent or poor financial circumstances, has his home and
lands set apart for a homestead for the benefit of himself
and family, free from any personal obligation held by any
creditor, and which the head of the family may cultivate,
improve, and dwell upon with his household, sheltered
beyond the reach of total financial misfortune. Under
the homestead laws of this state, the homestead exemp-
tion is not alone for the husband and his protection, but
for the benefit of his wife and children as well. The stat-

ute expressly awards certain exemptions to the wife and members of his family. Laws 1896, p. 219: *Beecher* v. *Baldy,* 7 Mich. 488.

By the provisions of this statute, the homestead exemption is not a privilege conferred upon the head of the family, but an absolute right. It was intended to secure and protect the home as against creditors, and as a means of support to every family in the state. No waiver of the homestead right could affect the interest of the wife and and children therein. *Dye* v. *Mann,* 10 Mich. 297; *Beecher* v. *Baldy,* 7 Mich. 506; *Williams* v. *Starr,* 5 Wis. 534; *Ring* v. *Burt,* 17 Mich. 465.

When the homestead, within the value limited by the statute, is once established by selection or occupancy, the constitution and statute enacted under it are a positive prohibition against levy and sale by creditors of the owner of the homestead. *Beecher* v. *Baldy,* Mich. 488; *Drake* v. *Kinsell,* 38 Mich. 432.

If the premises owned or occupied by the debtor as a homestead are worth less than the limit fixed by the statute as exempt to the head of the family, they are exempt from execution without any necessity on the part of the debtor to formerly select them as a homestead, and any sale thereof upon execution will not affect the title to such exempt homestead, or deprive the actual owner or occupant thereof of his homestead rights therein. In such a case the "selection" of a homestead by the judgment debtor is sufficiently manifest by the fact of his ownership, residence, use, or occupation as such, and a sale thereof under execution may be set aside as a cloud upon the title. *Thomas* v. *Dodge,* 8 Mich. 51; *Beecher* v. *Baldy,* 7 Mich. 488; *Riggs* v. *Sterling,* 60 Mich. 643; *Scofield* v. *Hopkins,* 61 Wis. 370; *Green* v. *Marks,* 25 Ill. 204; *Conklin* v. *Foster,* 57 Ill. 104.

If a selection of a homestead be made by a judgment debtor by writing or otherwise, before execution, levy, and sale, of more than the amount in value limited and fixed by the statute, such homestead is still liable for the debt of the execution creditor to the amount in value in excess of the limit exempted as fixed by statute, notwithstanding such selection. This is so because, if the claim of selection and exemption be made months or years before a levy, the value of the homstead may have increased to more than double the value limited by the statute as exempt when the execution is levied, and a large amount be lost to a creditor because of the rise in value or expensive improvements placed thereon. *Herschfeldt* v. *George*, 6 Mich. 450; Sess. Laws 1896, p. 215 c. 71, § 11.

In such a case, or if the homestead consists of more than one piece of land, neither of which is of the value of the exemption allowed, it is optional with the debtor which piece he may select and retain in full, and which piece or pieces shall be partially sold; but the homestead cannot be sold unless the officer receive a·bid greater than the amount exempted by statute, if contained·in one parcel of land. If the owner and the officer having the execution cannot agree as to the value of the homestead, or the partition thereof, then appraisers are to be chosen by the owner and officer to appraise, select, and set aside the exempt property as a homestead in the manner provided by the statute.

It will be seen from these and other provisions of the statute embraced in this act that where the debtor claims premises as a homestead, whether it consists of one or more pieces of land, and whatever may be its value, he is in no case required to take any steps to preserve, select, or protect such homestead exemption against the invasion of a creditor under a levy and sale upon an execution be-

fore such levy is made, and the debtor is called upon by the sheriff to make his selection of a homestead. *Beecher* v. *Baldy* 7 Mich. 488; *Thomas* v. *Dodge,* 8 Mich. 51; *Riggs* v. *Sterling,* 60 Mich. 643; *Scofield* v. *Hopkins,* 61 Wis. 370; *Green* v. *Marks,* 25 Ill. 205.

This result must necessarily follow since, by the provisions of the statute, the homestead may consist of one or many pieces of land in one or many different localities, provided they do not jointly exceed the statutory limit in value, and, in case they do exceed such limit, a selection must be made as provided by the statute. In each case the debtor is entitled to notice before sale, in order to be able to select his appraisers in case of disagreement between himself and the officer holding the execution. The statute does not contemplate that the debtor's house or place of residence shall necessarily be located upon the property claimed as exempt; since several distinct pieces of land in the same or different localities or counties may constitute the homestead when selected, and it would not be reasonable to require that the debtor should have a dwelling house or residence on each piece of land going to make up his homestead, and also require him to reside in such dwelling thereon, in order to protect such homestead rights from execution creditors. It is not the intent or purpose of the statute to require the head of a family to make a written or verbal declaration announcing the selection of any particular piece of land as his homestead at any time before execution levy thereon, in order to protect his homestead against judgment creditors, and an execution and sale of a homestead, without complying with the provisions of the statute with reference to the selection thereof by the officer holding the execution, and the judgment debtor, should be set aside, as an unjustifiable assault upon the homestead right. Under the stat-

utes of this state, a dwelling house upon the land claimed
to be exempt, and a residence therein, are not necessary
in order to render a homestead exempt from execution
levy.

The continued absence of the plaintiffs from their resi-
dence for a year at a time does not constitute an abandon-
ment of the homestead right, when it appears that such
absence was in the line of their employment, but with the·
continuous bona fide intention on their part to return
and live upon or occupy the premises as a homestead at·
such time when duty did not call them elsewhere. Such
bona fide intention to make the premises their home pro-
tected the homestead. *Kaeding* v. *Joachimsthal*, (Mich.)·
56 N. W. 1101; Wap. Homest. 187; *McMillan* v. *Warner*,
38 Tex. 411; *Riggs* v. *Sterling*, 60 Mich. 643; *Evans* v..
*Railroad Co.*, 68 Mich. 602; *Wagon Co.* v. *Kennedy*, 75 Tex.
212; Thomp. Homest. & Ex. § 272; *McClenaghan* v.
*McEachern*, (S. C.) 25 S. E. 296; *Bunker* v. *Paquette*; 37·
Mich. 79. It is undisputed that the plaintiff was the head
of a family dependent upon him for support, and that he·
resided in Salt Lake City adjoining the land in question;.
that his business as a missionary called him to other local-
ities most of the time, so that he spent only about one
month in a year at his home with his family, in Salt Lake..
During this time his dwelling place was in the residence
of his mother, adjoining one piece of the land in question,
and this lot was used in connection with his residence,,
and had an outhouse upon it. This lot was tilled and
used for raising vegetables and fruit for the support of·
his family. The other piece of land was used in connec-
tion with his home as a part of his homestead, for the·
benefit and support of his family. The land was shown
to be of the value of $2,200, or less than the amount ex-
empt to the plaintiff, under the statute. These pieces of·

land were claimed, used, and intended by the plaintiff to be used as his homestead. When this levy and sale was made, plaintiff and his family were away from home, and he had no notice of the execution, levy, or sale. He had no opportunity, as the law contemplates he should have, of selecting or claiming his homestead therein, until after the sale upon execution to the defendant. The officer making the sale made no demand upon the plaintiff for the selection of a homestead, appointed no appraisers to value the land, but sold it without notice of any kind being given to the plaintiff, and while he was absent from the state, and it does not appear what price the premises brought under the execution. Upon receiving notice of such sale, after it was made, plaintiff immediately served notice of his claim, and filed this complaint to quiet title and to prevent a delivery of the deed under such execution sale. Under the circumstances shown, we are of the opinion that the premises named in the complaint were not liable to be sold upon execution. Where a homestead is sold upon execution, when not liable to forced sale, and where the land is claimed to be exempt as a homestead, and sold upon forced sale upon execution by a sheriff without complying with the provisions of section 11, c. 71, p. 215, Sess. Laws 1896, and without giving the judgment debtor an opportunity after notice to select such homestead, or choose appraisers to allot or set apart such a homestead, a court of equity should set aside the sale as a cloud upon the title, upon a complaint filed by the judgment debtor against the officer and the defendant who purchased the title under his own execution. *Green* v. *Marks*, 25 Ill. 204; *Conklin* v. *Foster*, 57 Ill. 104; *Scofield* v. *Hopkins*, 61 Wis. 370; *Riggs* v. *Sterling*, 60 Mich. 643. We are of the opinion that the findings and judgment are not supported by the evidence. The case is remanded to

the trial court, with directions to set aside and vacate the findings, judgment, and decree therein, and to enter a decree in conformity to the prayer of the complaint, under this opinion.

ZANE, C. J., concurs.

BARTCH, J.:

I cannot agree with my brethren in reversing this case. One of the parcels of land in question is shown to be part of lot 5, block 93, plat A, Salt Lake City, and the other a part of lot 4, block 138, same plat. Both parcels are admittedly vacant pieces of land, without any dwelling house thereon. In the latter parcel the plaintiffs owned but an undivided half interest, and it will be noticed from the description that the two parcels are in different localities. Both of them came to plaintiffs by inheritance. The parcel in lot 5 is 3 1-3 rods front by 9 rods deep, and was at one time part of a tract 10 rods front by 9 rods deep. The whole piece was then used as a homestead, and such use was continued by the plaintiff Elias S. Kimball, his brother and mother, until about eight years ago, when the tract was apportioned between them, and each of the owners conveyed to the other. The part on which the house was built was conveyed to the mother. Concerning the partition and conveyance, the witness Elias S. Kimball testified in his own behalf: "About eight years ago, our mother having no home of her own, excepting the one we had built on our property aforesaid, and being dependent upon my brother J. Golden Kimball and myself, we conveyed to her the east three and one-third rods of said piece of property, ten rods front by nine rods deep, and also at that time partitioned the remaining six by nine rods between ourselves, each giving deeds

to the other. I took the first piece described in the complaint, and my brother the remaining three and one-third rods." Thus, it will be seen from the plaintiff's own testimony that the dwelling house was situated on an entirely different parcel from the one in dispute, and that the home place has been owned by different persons for the last eight years. Having thus been separated from the home place by conveyance, it was no longer a part of the homestead, because owned by a different person. The mother who resided on the home place could not thereafter claim it as such. After partition and conveyance, the disputed parcel became susceptible of being selected by its owner as a place for a home.

The second parcel in which appellants claim to own a half interest is situated in an entirely different block of the city. It is also shown that the appellant Elias S. Kimball was absent from this state for the last four years, except about a month in each year, and his wife and children, he says, were with him the greater part of the time. While, however, the appellants were thus absent from the state, it clearly appears that the owner of the parcels knew of the claim and judgment of the respondent Salisbury against him, and he consulted his attorney in regard to the matter of a homestead.—as to whether or not he could hold the land as such; and yet neither he nor his attorney made any protest whatever to the officer or judgment creditor against the sale of the property until after sale made and execution issued. Nor is it shown that any such use of the land was made for family purposes by the appellants as ought to be held sufficient to impart notice that it had been selected as a homestead. Nor is there any evidence to show that the judgment creditor or the officer knew what amount of property the judgment debtor owned. There was nothing to indicate

. to the judgment creditor or officer who made the sale that the land was claimed as a homestead, and therefore exempt from execution. No such claim was made to either of them until after the sale had been made, when the debtor asked to have the sale set aside, because he claimed it as a homestead.

Under these facts, the majority of the court say that the sale "should be set aside as an unjustifiable assault upon the homestead right," and base their ruling upon the statute of this state. I am unable to take such a view. of the statute or of the constitution of this state. The latter instrument, in section 1 of article 22, reads as follows: "The legislature shall provide by law, for the selection by each head of a family, and exemption of a homestead, which may consist of one or more parcels of lands, together with the apurtenances and improvements thereon of the value of at least fifteen hundred dollars from sale on execution." The statute referred to and quoted in the opinion of the majority of the court provides: "If the debtor be the head of a family, there shall be a further exemption of a homestead, to be selected by the judgment debtor, consisting of lands and appurtenances, which lands may be in one or more pieces in different localities of the same county in which the judgment debtor resides, or in different counties of the state," etc. Sess. Laws 1896, p. 215, c. 71, § 11. It will be noticed that both the constitution and statute provide for a homestead to be selected by the head of the family. Doubtless, under these instruments, where the land is owned and occupied by the judgment debtor and his family, such ownership and occupancy will be notice to all the world of their homestead rights. So, likewise, where the land is used by the judgment debtor and his family so openly and notoriously with the homestead as to impart notice to

the public that it is being used as a part of the homestead, such use will be notice to the judgment creditor that it forms a part of the homestead; and in neither of such cases will any other selection be necessary to protect the rights of the judgment debtor. Where, however, the land is vacant, separate and apart from any homestead, as in the case at bar, and especially as to the second parcel, I take it, the law is otherwise; and if, in such case, the owner or claimant of the homestead stands by and permits the judgment creditor to sell the property, he waives his right to claim it as a homestead. I cannot agree with this court in the proposition that, "if the premises owned or occupied by the debtor as a homestead are worth less than the limit fixed by the statute as exempt to the head of the family, they are exempt from execution without any necessity on the part of the debtor formally to select it as a homestead, and any sale thereof upon execution will not affect the title to such exempt homestead, or deprive the actual owner or occupant thereof of his homestead rights therein. In such case the 'selection' of a homestead by the judgment debtor is sufficiently manifest by the fact of his ownership, residence, use or occupation as such, and a sale thereof under execution may be set aside as a cloud upon the title." Under this rule it would seem that mere ownership is sufficient to set aside a sale made on execution, and hence every sale of property on execution must be made at the peril of the judgment creditor, and he is bound to know just what amount of property in value the owner has within the state. This also applies to a purchaser at such a sale, for he likewise assumes the risk of having the land claimed by the judgment debtor as a homestead after sale, and after payment of the purchase price, it may be, to an insolvent judgment creditor. I do not think that

such was the intention either of the framers of the con-
stitution or of the legislature in providing for a home-
stead. Nor, in my judgment, do the cases cited to support
this proposition sustain it.

In *Thomas* v. *Dodge,* 8 Mich. 51, the first one cited, the
court simply held that a village lot and house of less than
$1,500 in value, occupied by the owner with his family,
did not require any action on the part of the owner to
render it exempt from execution. Undoubtedly, where
a lot or parcel of land is occupied by the owner with his
family, such occupancy will be sufficient notice of his se-
lection as a homestead. In *Beecher* v. *Baldy,* 7 Mich. 488,
Mr. Justice Christensen, delivering the opinion of the
court, said: "But take, second, the case where the tract is
clearly within the quantity limited by the constitution,
and admitted to be also within the constitutional limit
as to value, not constituting part of a larger tract owned
by the debtor, but capable of division so as to leave a
homestead of less value; is any actual or formal selection
necessary, or will its ownership and occupancy by the
debtor as a homestead in fact exempt it as a homestead
under the constitution? We think it will, and that no
other selection is necessary." And again he says: "We
think, therefore, that where the whole tract owned and
occupied by the debtor does not exceed the quantity men-
tioned in the constitution, and is admitted to be within
the prescribed value, the law, in the absence of any proof,
must presume the acceptance by the debtor of the benefits
conferred by the constitution." So, in *Riggs* v. *Sterling,* 60
Mich. 643, it was said: "The homestead right exists in
favor of the poor and the rich alike. It is for the support
of the one, and security against want and destitution for
the other; and when the homestead claimed to be pro-

17 UTAH—26

tected is within the quantity limited by the constitution, and occupied by the owner, such occupancy is itself evidence of an election by the owner of the parcel occupied, and a notice to all of its true character as a homestead, and of his selection, and the extent thereof and no other or further notice is necessary to be given to enjoy the fullest protection of the law." *Schofield* v. *Hopkins*, 61 Wis. 370, is a case where the owner, prior to the commencement of the action, cleared and prepared 1¼ acres of land in question for a residence and garden site, dug and curbed a well upon the same, made a foundation for a dwelling house and other buildings to be erected upon the premises, and had material thereon. The court simply held that this was sufficient intention and selection of the homestead, and that no other notice to the judgment creditor was necessary. In *Green* v. *Marks*, 25 Ill. 204, it was said: "But when the law has cast this exemption upon the debtor, it will be discharged from that condition, when the debtor ceases to occupy it as a residence, shall cease to have a family, or shall release or waive in writing, subscribed and acknowledged by him in the same manner in which deeds are required by law to be acknowledged." So in *Conklin* v. *Foster*, 57 Ill. 104, it was held that a tenant for years, owning a house upon the premises, and occupying it with his family, had a right to hold it free from levy and sale under an attachment or execution, and a purchaser at such sale acquired no title thereby. These are all the cases cited to the proposition above quoted from the opinion of the majority of the court. I do not question their correctness, but in my judgment, they do not sustain the holding of this court. Nor is the doctrine announced in the case at bar in harmony with that in *Knudsen* v. *Hannberg*, 8 Utah, 203, where Mr. Justice Miner, delivering the opinion of

the court, said: "The general purpose of the several statutes upon this subject, as I understand them, was merely to preserve the homestead for family occupation as against any sale for debts, or any sale by the married owner without his wife's concurrence, so far as her dower interest might be affected." It will be noticed that in the opinion of the court at that time the purpose of the homestead laws was to preserve the "homestead for family occupation," and yet when that decision was rendered, same as now, the statute provided merely for a homestead to be selected by the head of a family, without specifying how the selection should be made. See, also, *Cook* v. *Higley,* 10 Utah, 228; Wap. Homest. p. 3, § 2.

Whether, under the constitutional provision above quoted, even the legislature can exempt real property as a homestead which is vacant, and in no way connected or used with the home place, is a question evidently not free from doubt. I have no inclination, however, in this case, to express an opinion on this point, but sometime it will be a matter of interest to determine the sense in which the framers of the constitution employed the term "homestead,"—whether in the sense of family residence, a place owned and ocupied by the family, or used in connection with the home place, or in the sense of exemption, without making use and occupation necessary elements. Waples, in his work on Homestead and Exemptions, in section 1, p. 1, says: "A homestead is ordinarily a family residence, but the word has both a common and a technical meaning. The latter is employed in the title and text of this treatise. As a law term, it may thus be defined: Homestead is a family residence owned, occupied, dedicated, limited, exempted and restrained in alienation, as the statute prescribes. In this sense, courts and the profession generally are in the constant habit of using

the word. In legal arguments, decisions, reports, digests, statutes, and constitutions, this is the usual significance. The word is rarely used in its ordinary sense, and then qualified to show that an exempt, restricted, statutory, family residence is meant." In Thompson on Homesteads and Exemptions (section 100), the following general definitions are given: "What is the homestead? 'Stethe,' or 'sted,' says Lord Coke, 'betokeneth properly the bank of a river, and many times a place.' 'The homestead, according to that definition, means the home place —the place where the home is; and such is its legal acceptation at the present day. It is the home—the house and the adjoining land, where the head of the family dwells; the home farm. It is the land where is situated the dwelling of the owner and his family.' 'A homestead necessarily includes the idea of residence.' It must be the owner's 'place of residence—the place where he lives.' The leading and fundamental idea connected with a homestead is unquestionably associated with that of a place of residence for the family, where the independence and security of a home may be enjoyed without danger of its loss or harassment or disturbance by reason of the improvidence or misfortune of the head or any other member of the family." Whatever may the sense in which the framers of the constitution used the term "homestead," I am of the opinion that the owner of vacant land who claims the same as a homestead ought at least to be required, in some way, to notify his judgment creditor or the officer, before sale, of the fact that he so claims it. This is clearly indicated in the case of *Beecher* v. *Baldy*, *supra*, where it is said: "The statute clearly contemplates action on the part of the debtor, in consequence of and founded upon the levy; and it could not have contemplated that such action founded upon the levy could have

been taken by the debtor until he was aware the levy had been made. But if this were not so under the statute alone, before the constitution, then the constitution has modified the statute to this extent at least, if not to the extent of allowing the debtor to select at any time before the sale, or so as not unduly to delay a sale." In *Riggs* v. *Sterling, supra,* it is said: "The homestead right, however, before the owner has made his election and selection in the manner hereinbefore set forth, may, all parties interested therein having knowledge of the facts, be waived by failing to make such election and selection before sale by the sheriff." This court, in *Gammett* v. *Storrs,* 15 Utah, 336, said: "The law proivese for an 'exemption of a homestead, to be selected by the debtor.' Hence, unless the homestead be selected by the debtor, there is no exemption, and such selection must doutbless be made before sale on execution, because upon sale the debtor ceases to be the owner of the property. This is so from the nature of things, although there is no specific provision as to the time when the homestead is to be selected. A failure of selection, therefore, before sale, is fatal to the exemption." See *People* v. *Plumsted,* 2 Mich. 466. It is true, since this decision was made the statute in this state has been changed in some particulars; but there appears to be no material change as to the point under consideration. There are other propositions of law stated in the opinion of the court to which I cannot assent, but I do not regard it important to discuss them separately. I dissent from the doctrine established in this case.