DAVIS v. NEIHARDT.

1. HOMESTEADS—EXEMPTIONS.

One may not have homestead rights in two houses at the same time.

2. SAME—ABANDONMENT—TEMPORARY ABSENCE—INTENT.

A temporary absence from the home does not render it liable to levy and sale on execution, where there has been a continuing good-faith intent to return and occcupy it as a homestead.

3. SAME—ABANDONMENT—INTENT—FACTS TO BE ESTABLISHED.

On a bill by plaintiffs to set aside an execution levy and sale on their homestead, where plaintiffs had left their farm home and moved to the city for the avowed purpose of earning money to pay up their debts, whether they had abandoned their homestead, whether they had a continuing good-faith intent to return, and whether their absence was temporary, held, to be questions of fact to be established as any other facts.

4. SAME—PURCHASE OF ANOTHER HOME—EVIDENCE—INTENT.

While the fact that plaintiffs had bought and were living in another home in the city, standing alone and unexplained, might be strong evidence of abandonment of their farm home, held, not controlling in view of their explanation that they could not rent a house on account of the scarcity, that they are buying on a contract, paying monthly about the same as rent, and that they are accomplishing their purpose in moving, viz., improving their financial condition.

5. SAME—EVIDENCE—SUFFICIENCY.

Evidence held, to justify the decree of the court below for plaintiffs.

Appeal from Kalkaska; Lamb (Fred S.), J. Submitted January 6, 1921. (Docket No. 57.) Decided February 10, 1921.

On right to testify as to intent with reference to residence, occupation or use of homestead, see note in 23 L. R. A. (N. S.) 397.

Bill by William H. Davis and wife against S. Neihardt to set aside an execution levy on a homestead. From a decree for plaintiffs, defendant appeals. Affirmed.

*Ernest C. Smith,* for plaintiffs.

*J. L. Boyd,* for defendant.

Fellows, J. Plaintiffs, husband and wife, file this bill to set aside an execution levy on and a sale of 40 acres of land located in Kalkaska county, worth not to exceed $1,500, which they claim as a homestead. Plaintiff William H. Davis had lived on the farm, which consisted of 80 acres, before and after his marriage, for a period of 40 years. It had belonged to his father and in 1906, after his father's death, he bought out the other heirs and at that time placed a mortgage on the 80 for $625 and sold $500 worth of timber from the farm. He does not appear to have fared well financially and in January of 1917, attracted by the high wage paid in the cities, went to Pontiac to earn enough money to pay the taxes on the farm. He was at this time considerably involved. The following spring his wife and five children went to Pontiac and plaintiffs have since lived there. It is their claim that their going to Pontiac was a temporary matter; that the move was made for the sole purpose of earning money to pay their debts and fix up the farm, and that they had a continuing intent to return to the farm to live when their temporary purpose had been accomplished. They first lived in a rented house at Pontiac, but this was sold and they testify, and their testimony is not disputed, that housing conditions in Pontiac were such that they could not find another place to rent and were obliged to buy a place on contract in order to have shelter. They occupied this place awhile when they sold it and bought another place on con-

tract and are now living in it, and paying $30 a month on the contract.    They have never, so far as this record discloses, claimed this place as a homestead and say it is for sale.    Mr. Davis has never registered or voted at Pontiac and it is undisputed that he has been paying off his old debts, although that of defendant is still unpaid.    When they moved from the farm they left some few things in the house and the farming tools were left with neighbors.    It is pointed out by defendant that both the things left in the house and the farming tools were of little value.    But we are persuaded that this fact is not controlling.    Doubtless plaintiffs at that time had but little valuable property they could either move or leave behind.    The fact that some of their household furniture was left in the house and the farming tools with their neighbors has some tendency to support their claim that they intended to return.    That it was not as valuable or useful as some that was taken with them goes to the weight to be given this fact, but it does not eliminate it from our consideration.

Defendant's counsel is correct in his contention that one may not have homestead rights in two houses at the same time.    This court has so held.    *LaPlant* v. *Lester,* 150 Mich. 336; *McMonegal* v. *Wilson,* 103 Mich. 264; *Stotts* v. *Stotts,* 198 Mich. 605; *Ritter* v. *Seestedt,* 212 Mich. 208.    But this court has likewise held that a temporary absence from the home does not render it liable to levy and sale on execution, where there has been a continuing good-faith intent to return and occupy it as a homestead.    *Bunker* v. *Paquette,* 37 Mich. 79; *Karn* v. *Hanson,* 59 Mich. 380; *Kaeding* v. *Joachimsthal,* 98 Mich. 78; *Hitchcock* v. *Misner,* 111 Mich. 180; *Steel* v. *Blanchette,* 193 Mich. 167.    In *Bunker* v. *Paquette, supra,* Justice MARSTON, speaking for the court, said:

213—Mich.—7.

"The fact that Bunker had temporarily gone away from this house, leaving a part of his furniture therein, and had been living in a rented house at some distance therefrom for a period of some two years previous to the levy, would not render it subject to be sold upon execution, unless it farther appeared that he had abandoned it as his homestead. Temporary absence therefrom would not destroy the owner's homestead rights therein. Neither in the stipulation nor in the facts as found by the court does it appear that Bunker's absence was anything more than temporary, nor can any other conclusion be arrived at from the facts found. If the intention of the party as gathered from all the facts and circumstances is to govern, as we think it should, then the length of time the party is absent, although a circumstance to be taken into consideration, yet standing alone, cannot be considered as conclusive. If time alone was to be the guide it would be very difficult to draw the line, which should stand as an unerring guide in all cases."

*Hitchcock* v. *Misner, supra,* is upon principle analogous. In that case complainant had vacated the home a year and a half before the levy; he had gone to his father's home with his family and had received a deed to the premises of his father. But he explained the conveyance to him by his father and claimed to have had a continuing intent of returning to his own home. This court affirmed a decree sustaining his homestead rights.

In *Kaeding* v. *Joachimsthal, supra,* an absence of six years was held not to bar homestead rights where there was a continuing intent to return and occupy the homestead. And in *Steel* v. *Blanchette, supra,* Justice BIRD, speaking for the court, said:

"The mere absence from the premises four or five years would not be conclusive that she had abandoned it as a homestead if she had, during all that time, intended to return."

Whether plaintiffs had abandoned the farm as a

homestead, whether they had a continuing intent in good faith of returning to it after their purpose in going to Pontiac had been accomplished, whether their absence was but temporary, are all questions of fact to be established like any other facts. *Hoffman* v. *Buschman*, 95 Mich. 538; *Kaeding* v. *Joachimsthal, supra; Hitchcock* v. *Misner, supra; Stotts* v. *Stotts, supra.* Plaintiffs' testimony sustains their claim, as does the testimony of a neighbor with whom they left farming tools. The fact that they had bought and were living in another home in Pontiac, standing alone and unexplained, would be strongly evidential of abandonment of the farm. But the explanation of that purchase does not appear unnatural or improbable. They are paying on the purchase price about what they would pay for rent and are improving their financial condition which was the declared purpose of the move. The trial judge believed this testimony. He had the advantage we do not possess of seeing the witnesses and hearing their testimony. We find no occasion to disturb his conclusions.

The decree will be affirmed, with costs of this court.

STEERE, C. J., and MOORE, WIEST, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.