# J. GOLDEN KIMBALL AND JENNIE S. KIMBALL, PLAINTIFFS AND APPELLANTS, *v.* ORANGE J. SALISBURY, AND THOMAS P. LEWIS, DEFENDANTS AND RESPONDENTS.

HOMESTEAD — SELECTION BY JUDGMENT DEBTOR — HOW MADE —
CONST. ART. 22, SEC. 1 AND SEC. 11, CHAP. 71, SESSION LAWS
1896 CONSTRUED.    EXEMPTION RIGHTS — WHEN SILENCE OR
PASSIVITY NO WAIVER.    CAVEAT EMPTOR — RULE OF — APPLIES
TO JUDICIAL SALES.

1. *Homestead — Selection by Judgment Debtor — How Made — Const.
   Art. 22, Sec. 1 and Sec. 11, Chap. 71, Session Laws 1896 Construed.*
   Where a judgment debtor owns real estate which does not
   exceed in value the amount of homestead exemption, the
   occupation and use of the said real estate for the benefit of
   the family is a sufficient selection under Const. Art. 22, Sec.
   1 and Sec. 11, Chap. 71, Session Laws 1896.

2. *Exemption Rights — When Silence or Passivity No Waiver.*
   Unless a party has actual notice of a levy on, and sale of, his
   homestead, his failure to assert his rights is not a waiver of
   them, and he is not estopped from thereafter asserting such
   rights, for unless a person knows there is occasion for him to
   speak or act, silence or passivity will not conclude him.

3. *Caveat Emptor — Rule of — Applies to Judicial Sales.*
   The rule of *caveat emptor* applies to judicial sales, and a purchaser at such sale takes the property subject to all infirmities
   of the proceedings of sale.

(Decided March 28, 1899.)

Appeal from the Third District Court, Salt Lake
County, Hon. Ogden Hiles, *Judge.*

Action to quiet title to three pieces of real property
separately described in the complaint.

19 Utah—11

From a judgment quieting and confirming the title of plaintiffs in one of the three pieces and directing a deed to defendant Salisbury for the other two, plaintiff appeals. *Reversed.*

*Messrs. Young and Moyle,* for appellant.

If this first North Street ·property is a part of or even used in connection with the home of the appellants, then their residence upon it and ownership and use of it was all the selection that was necessary, and all that could be done under any circumstances ; for the statute made no other requirement, and certainly courts can not legislate and make any other requirements. *Kimball* v. *Salisbury,* 53 Pac., 1037 ; *Riggs* v. *Sterling,* 60 Mich., 643, 650 ; *Beecher* v. *Baldy,* 7 Mich., 487, 503, 504 ; *Thomas* v. *Dodge,* 8 Mich., 51 ; *Scofield* v. *Hopkins,* 61, Wis., 370 ; *Green* v. *Marks,* 25 Ill., 205 ; *Conklin* v. *Foster,* 57 Ill., 104.

There can be no selection of a homestead when all the property that the homestead claimant has is within his exemption, as in the case at issue. *Beecher* v. *Baldy,* 7 Mich., 504 ; *Cols.* v. *Green,* 21 Ill., 103 ; Thompson on Homestead and Exemption, Sec. 652 ; *Scofield* v. *Hopkins,* 61 Wis., 370. All the cases uphold and urge a construction of the statute favorable to the homestead claimant. *White* v. *Rowley,* 46 Iowa, 680; Thompson on Homestead and Exemptions, Secs. 4, 7, 731 ; *Haskins* v. *Litchfield and wife,* 31 Ill., 137 ; *Riggs* v. *Sterling,* 60 Mich., 649 ; Waples on Homestead and Exemptions, p. 30.

*W. C. Hall, Esq.,* for respondent.

The respondents contend that both the constitution and

statute provide for a homestead to be selected by the head of the family. Sec. 1, Art. 22, of the constitution. Chap. 71, Subd. 2, p. 215, Session Laws of 1896.

The Revised Statutes of 1898 provide the manner of selection, and the respondents insist that prior to the Revised Statutes the same general formalities obtained.

Where, however, as in this case, the land is separate, vacant, and apart from any homestead that has a house or home in which the judgment debtor resided, especially as to the second parcel of land, the law should be as we contend ; and if in such case, where the owner or claimant of the homestead stands by and permits the creditor to sell the property, he waives his right to claim it as a homestead. *Elias. S. Kimball* et al. v. *Salisbury*, et al., 53 Pac., 1038 ; *Thomas* v. *Dodge*, 8 Mich., 51 ; *Riggs* v. *Sterling*, 60 Mich., 643 ; *Scofield* v. *Hopkins*, 61 Wis., 370 ; *Green* v. *Marks*, 25 Ill., 204 ; *Conklin* v. *Foster*, 57 Ill., 104 ; *Knudsen* v. *Hamburg*, 8 Utah, 203.

Under the constitutional provision above quoted, we deny the power of the legislature to exempt real property, as a homestead, which is vacant and in no way connected or used with the home place. Waples on Homestead and Exemptions. Sec. 1, p. 1 ; Thompson on Homestead and Exemptions, Sec. 100 ; *Gammet* v. *Storrs*, 15 Utah, 336.

A finding that all the allegations of the complaint are true, and all the allegations of the answer untrue, is sufficient. *Carey* v. *Brown*, 58 Cal., 180 ; *Lewis* v. *Adams*, 70 Cal., 403 ; *San Diaga* v. *Seifert*, 97 Cal., 594.

BASKIN, J.

This is an action to quiet the title to three pieces of real property severally described in the complaint as follows : .

1. Commencing fifty-two and one-half feet east from the southwest corner of lot one, block forty-three, plat "A," Salt Lake City Survey, and running thence east forty-one and one-half feet ; thence north ten rods ; thence west forty-one and one-half feet ; thence south ten rods to the place of beginning.

2. Commencing at a point thirteen and one-third rods east of the northwest corner of lot five, block ninety-three, plat "A," Salt Lake City Survey, running thence east fifty-five feet; thence south nine rods ; thence west fifty-five feet ; thence north nine rods to the place of beginning.

3. Also an undivided one-half interest in lot four, block one hundred and thirty-eight, plat "A," Salt Lake County, State of Utah.

The defendant having recovered a judgment against the plaintiffs, Z. T. Stewart, and Elias S. Kimball, caused an execution which was issued on said judgment, to be levied on said real estate. The sheriff sold the two pieces of said real property last described in the complaint, and the other piece was being advertised for sale by said sheriff when this suit was instituted. The defendant at the sale of the said pieces purchased the same, but has not yet received deeds of the same from the sheriff. The sale of the other piece was postponed after the institution of this suit. The sale was made on the 8th day of March, 1897. The plaintiffs claim that the real property so sold, and which was being so advertised for sale by the sheriff, constituted their homestead, and was therefore exempt from levy and sale on execution. The court below ordered and adjudged that the first-described piece of real estate constitutes the homestead of plaintiffs, and that the title of plaintiffs thereto be quieted and confirmed, and that the sheriff forthwith execute and deliver to the defendants a deed for the balance of said real property, so that the only

question now to be determined is whether the last two described pieces constitute a part of plaintiffs' homestead.

The following facts are supported by testimony which is not disputed, and are embraced in the findings of fact by the court below; to wit: That plaintiffs are and were at and before said levies and sales, husband and wife, the said J. Golden Kimball being the head of the family, consisting of himself, wife, and five children. That the value of said real estate was at and before the date of said levies and sale worth less than $3,250. The testimony also discloses the facts that the title to a lot nine by ten rods, was acquired by the plaintiff, J. Golden Kimball, and his brother, Elias S. Kimball, in 1868, by inheritance from their father ; that in 1880 these brothers built a residence on the east side of said lot for their mother and themselves to live in ; these brothers held said lot as tenants in common until about the year 1890, when they deeded to their mother three and one-third rods by nine rods on the east side of said lot, and severed their interests in the residue, the said Elias S. Kimball deeding to his brother three and one-third rods by nine rods immediately adjoining and west of the portion deeded to his mother, and the said J. Golden Kimball deeding to his brother the residue of said lot. The piece deeded to the mother embraced said residence, but did not include the outhouses connected therewith. These were on the piece deeded to the said J. Golden Kimball ; that the whole of said lot was within one inclosure, and no partition fences have ever been built thereon. How long the mother and sons occupied said dwelling house does not appear, but the said Elias S. Kimball, after his marriage, when he was in the city, resided with his mother until the time of her death, which occurred early in the year 1896. A short time before her death the said J. Golden Kimball with his

family moved into said dwelling house and temporarily
resided there until the 20th day of November, 1897, at
which date he removed to the premises which were after-
ward awarded to him by the lower court, and on which
he was living at the date of the trial ; that on the three
and one-third rods deeded to the said J. Golden Kimball
there was an orchard, and during the lifetime of the
mother the products of the same, and the outhouses there-
on, were used by her and her family for the benefit of her
family ; that while the said J. Golden Kimball continued
to occupy the said dwelling house, after the death of his
mother, said outhouses, orchard, and garden were in like
manner used by him and his family. The other parcel,
which is the third one before described, was also held
in common by said brothers, and was inherited from their
father ; that this parcel was used by said brothers for the
production of vegetable and garden products for their fami-
lies. Some of the time it was used for pasturage, and was
sometimes leased for gardening purposes. The three parcels
claimed as a homestead by the plaintiffs was the only real
estate owned by the said J. Golden Kimball, and there
were no houses on either of the two pieces last described,
except the outhouses before mentioned, but there was
a dwelling house on the first parcel described, and during
the time that the said J. Golden Kimball and his family
occupied his deceased mother's house, it was in the pos-
session of his lessee. In regard to his occupancy of his
mother's house the said J. Golden Kimball, when testify-
ing in the case, was asked by his attorney ''whether or not
your residence with her was permanent or temporary,''
and objection to the question being made by the opposing
counsel, the judge said, '' The question is as to his inten-
tion at that time, whether his residence was his permanent
residence at that time, or whether it was merely temporary;

he can answer the question." The witness answered, "It was merely temporary." The witness in this connection further testified that he had no other intention than to live on the premises first described as soon as he could leave his temporary residence.

No evidence in rebuttal of these statements by said witness, or any of the facts before stated, was introduced, so that there is no contention in regard to the same. No objection was made to said sale until after it was made, but the plaintiff, J. Golden Kimball, was not aware of either the levy or sale until some months after it took place. The record is silent as to any knowledge or information of the wife, regarding the matter, but she was not a party to the judgment of the defendant.

The three parcels of real estate were not contiguous, but were situated in the city at considerable distances from each other.

In view of these facts, two questions are presented:

1. Did the premises sold constitute any part of the homestead?

2. If they did, was the right to the homestead waived by a failure to claim the same, previous to the sale?

Regarding the first question, the Constitution, Sec. 1, Art. 22, provides: "The Legislature shall provide by law for the selection by each head of a family an exemption of a homestead, which may consist of one or more parcels of lands, together with the appurtenances and improvements thereon, of the value of at least $1,500, from sale on execution."

In pursuance of this section of the Constitution, the Legislature in 1896 passed an act relating to exemptions from levy and sale on execution. Session Laws of 1896, p. 213. Sec. 11 of said act provides that "If the debtor be the head of a family, there shall be a further

exemption of a homestead, to be selected by the judgment debtor, consisting of lands and appurtenances, which lands may be in one or more pieces in different localities of the same county in which the judgment debtor resides, or in different counties of the State, together with the appurtenances and improvements thereon not exceeding in value the sum of fifteen hundred dollars, for the judgment debtor, and the further sum of five hundred dollars for his wife, and two hundred and fifty dollars for each other member of his family."

The statutes of most of the other States, allowing homestead exemptions, confine the privilege to the home place, to the house and adjoining land where the family resides.

Our statute upon the subject has a much wider scope than this, and therefore but few of the decisions of courts in other jurisdictions, furnish us any light regarding the question under consideration, and but few of the numerous authorities quoted by counsel have any application.

Said act clearly expresses an intention of the legislature not only to protect the home of the family from forced sale, but to secure to the debtor and his family real estate, with the appurtenances and improvements thereon, remotely situated from the home place and having no relation thereto except its utility as a means of support for the family.

The statute is silent regarding the use which shall be made of such outside real estate, and in the absence of any restrictions it may be used in any manner which the head of the family may deem best calculated to subserve the purpose for which it was exempted.

The act further provides that " If the homestead selected by the judgment debtor is of greater value than is exempted under this section, and if it consists of two or

more separate pieces of land and appurtenances, neither of which is of the value of the amount of the exemption, it shall be optional with the judgment debtor which piece or pieces of land he will select and retain in full, and which piece or pieces shall be partitioned or sold.''

This provision, and the one before quoted, as contemplated by the Constitution, require that the head of the family shall select the homestead, but does not declare how or when the selection shall be made, but in order to identify the homestead, a designation of the *locus rei sitæ* in some manner is necessary. The selection of the homestead is the inception of the right.

Therefore, to determine what constitutes a selection, within the meaning of the statute, construction must be resorted to, and in construing its provisions resort may be had to the decisions and authorities reflecting light upon the subject. In the majority opinion of this court in the case of *Elias S. Kimball* v. *Salisbury et al.*, 17 Utah, 381; 53 Pac., 1040, this language is used: ''If the premises owned or occupied by the debtor as a homestead are worth less than the limit fixed by the statute as exempt to the head of the family, they are exempt from execution without any necessity on the part of the debtor to formally select them as a homestead, and any sale thereof upon execution will not affect the title to such exempted homestead, or deprive the actual owner or occupant thereof of his homestead rights therein. In such a case the 'selection' of a homestead by the judgment debtor is sufficiently manifest by the fact of his ownership, residence, use or occupation as such, and a sale thereof under execution may be set aside as a cloud upon the title.''

And the following cases are referred to in support of that view: *Thomas* v. *Dodge*, 8 Mich., 51; *Beecher* v. *Baldy*, 7 Mich., 488; *Riggs* v. *Sterling*, 60 Mich., 643;

27 N. W., 705; *Scofield* v. *Hopkins*, 61 Wis., 307; 21 N. W., 259; *Green* v. *Marks*, 25 Ill., 294; *Conklin* v. *Foster*, 57 Ill., 104

In each of the cases referred to, the real estate in controversy was the home place, on which was situated the dwelling house of the debtor, in which he resided with his family.

The same doctrine is held in the case of *Hubble et al.* v. *Canady*, 58 Ill., 425. Many other cases hold the same way.

In the case of *Elias S. Kimball* v. *Salisbury*, *supra*, Judge Bartch dissented, and in his dissenting opinion, while he did not dispute the correctness of the cases quoted by the majority of the court, under the facts which they each disclosed, he denied their application to the case under consideration, because the facts in that case differed from the facts in the cases quoted. He announced his views regarding the matter in this language: "It will be noticed that both the constitution and statute provide for a homestead to be selected by the head of the family. Doubtless, under these instruments, where the land is owned and occupied by the judgment debtor and his family, such ownership and occupancy will be notice to all the world of their homestead rights. So, likewise, where the land is used by the judgment debtor and his family so openly and notoriously with the homestead as to impart notice to the public that it is being used as a part of the homestead, such use will be notice to the judgment creditor that it forms a part of the homestead; and in neither of such cases will any other selection be necessary to protect the rights of the judgment debtor."

The statement made in the first sentence quoted from the majority opinion is too broad, for the reason that real property is frequently purchased for other than homestead

purposes.   It is extensively dealt in by those engaged in
real estate speculations without regard to its use as a
homestead.   The sentence which follows the one above
referred to properly states the correct rule on the subject.
The same rule is also stated in the dissenting opinion, with
the addition that the occupation of the homestead must
be "so open and notorious as to impart notice to the
public."

The term "selected" is not used by the statute in its
general sense.   As defined by Webster, the term means
"to choose and take from a number; to take by prefer-
ence from among others."

Where the head of the family owns several parcels of
real estate which are of less value than the limit of value
fixed by the statute, he can make no selection within the
strict meaning of that term unless he should select less
than the statute permits.   No such abridgment of the
homestead right as this would impose, was contemplated
by the legislature.   In no case, except where the claimant
owns real estate of greater value than the limit, can a
selection be made without curtailing the right granted by
the statute. *Beecher* v. *Baldy*, 7 Mich., 488; *Thomas* v.
*Dodge*, 8 Mich., 50; Thompson's Homestead Exemptions.
Secs. 652, 653.

See also cases cited by this court in *Elias S. Kimball*
v. *Salisbury*, 17 Utah, 381; 53 Pac., 1040, hereinafter
referred to.

The term "selected" was therefore used in the statute
in a sense different from that which its general meaning
indicates.   It was used in the sense of designation, ap-
propriation, or choice, all of which indicate the idea of
selection, not in its general, but special, meaning.

Webster defines the term "designation" thus, "selec-
tion and appointment for a purpose, allotment, the act of

designating or pointing out," and "appropriation" thus, "the act of setting apart or assigning to a particular use in exclusion of all others; application to a special use or purpose, as of a piece of ground for a park."

The Constitution of Michigan provided as follows: "Every homestead not exceeding forty acres of land, and the dwelling house thereon, and the appurtenances, to be selected by the owner thereof, shall be exempt." In the case of *Beecher* v. *Baldy*, *supra*, the claimant owned a tract of land which did not exceed the quantity exempted, on which he lived, and said tract was all the land owned by him. There was no law providing how a selection should be made. In the opinion of the court this language is used: "In such a case no selection, in any sense of the term, is, we think, required either by the Constitution or the law. But, if any selection in such case is required, it must be in some sense of the term which renders it possible. It can only be possible in such case by using the terms in the sense of choosing out or selecting a place of residence from the great mass of property in the State, without reference to the ownership of any, except the particular tract; in other words, that the party has chosen to obtain and occupy this particular place as a homestead, instead of purchasing and residing elsewhere in the State."

The term "selected" was not used in the act of the legislature in a sense which would make any selection in cases like the one at bar impossible, except by the abridgment of the homestead right granted thereby as an entirety, but was used in the sense of the terms herein before defined, and its purpose is to identify the homestead.

Certainly the occupation must be such as to fully indicate that a selection has been made by the head of the

family, but nothing more than this is required. To illustrate: if the homestead consists of a single piece of real estate with a dwelling house thereon, and the debtor and his family live in the same, that certainly is a sufficient selection. He is not, however, required to live there continuously. If he and his family should move from the premises and reside in some other place temporarily, not with any intention of abandoning his homestead, but with the intention of returning to the same, his and his family's right to the homestead would not be impaired, unless their absence should be protracted for a period so unreasonably long as to refute the idea of their intention to return.

*Miles* v. *Johnson*, 18 Utah, 428.

In their absence, the occupancy of the premises by a tenant would not defeat their right to the homestead. *Brockaway* v. *Ogle*, 48 N. E., 394; *Dickerson* v. *Gillespie*, 32 S. W., 1084; *Morse* v. *White*, 51 Pac., 622; the *Kansas Coal Co.* v. *Judd*, 6 Kan. App., 478.

The act of the legislature does not restrict the homestead to a single piece of real estate, but permits the head of the family to select parcels, with their appurtenances and improvements, remotely situated from each other and from the home place. A selection of such parcels, located in separate counties, is permitted. Some or all of these may or may not have dwelling houses upon them. Regarding these parcels, what acts are necessary in order to indicate that a selection of them has been made? If there be dwelling houses on all of the parcels, the occupation of all of them by the debtor and his family at the same time, is a physical impossibility. If there be no dwelling houses except on the home place, then the only

occupation which is practicable or can be reasonably required, is such use of these parcels for the benefit of the family as is generally made .by the owners of lands not occupied as dwelling places, and when so used the selection is as valid as the selection made of a single piece of land with a dwelling house thereon, by the debtor and his family residing in such dwelling, and from the nature of the case no other selection can be made.

It is evident that the legislature, by exempting parcels of land remotely situated from each other, intended to do more than merely protect the home place from forced sale. It also intended to secure to the family a means of support. We are of the opinion that the legislature intended that tracts of land selected, which are remotely situated from the home, with its appurtenances and improvements, might, at the discretion of the head of the family, be used in any manner which would furnish means for support. For that purpose such property may be leased. *Stevens* v. *Hollingsworth,* 74 Ill., 202–208; *Hubble et al.* v. *Canady,* 58 Ill., 425–427.

In the last case, which is approved in 74 Ill., 202, the court said : " We are not to regard the intention of the legislature as being only to save a mere shelter for the debtor and his family, but that it was the purpose to give him the full enjoyment of the whole lot of ground exempted, to be used in whatever way he might think best for the occupancy and support of his family, whether in the way of cultivating it, or by the erection and use of buildings upon it, either for the carrying on of his own business or for deriving income in the way of rent."

If tracts other than the home place, not suitable for cultivation, and having dwelling houses upon them, should, as the statute permits, be selected, to prohibit the head from leasing such tracts would destroy or greatly diminish

their utility as a means of support and defeat one of the evident objects of the homestead exemption. If such tracts should have no dwelling houses thereon, but are suitable for cultivation, or if they should contain deposits or possess any other elements from which revenue could be derived, and the head of the family, either from lack of ability, experience, or skill, or from any cause, should be unable to utilize the same by his own personal efforts, or if possessing all of these qualities he should think that better results could be obtained by renting the property, his right of homestead would not be impaired by doing so.

No one desiring to extend credit to the head of the family could be misled or injured thereby, because the possession of the tenant would not indicate the ownership of the landlord, nor could the public in any way be injured. The possession of the tenant would require any one desiring to deal with the property to make investigation regarding the title, and such investigation, if properly made, would reveal the existence of the homestead. We therefore conclude that the occupancy and use of the property necessary to make the selection of it as a homestead, required by the statute, where the owner has no real estate of greater value than the amount named in the statute, need not be more open and notorious than its use, for the benefit of the family, in the manner before indicated.

We are of the opinion that the use which the facts in this case show that the plaintiff made of the second and third described parcels of real estate, was a sufficient selection of the same as a part of his homestead, as the real estate which he owned and claimed as a homestead did not exceed in value the amount of the exemption.

The third piece was held and used by the plaintiff in common with his brother, and this, it was claimed in the

argument, prevented that piece from being held as a part of the homestead.    The answer to this is that the statute provides that the words ''lands and real estate * * * shall be held to include any interest less than an estate in fee simple or an interest as tenant in common or joint tenant held by the judgment debtor.''

In regard to the second question, the plaintiff testified that he did not learn or know anything about the levy or sale until after the sale was made.    The statute does not require any notice of the levy to be given.    The notice given of the sale was only constructive and not actual notice to the plaintiff.    He testified that he had no actual notice, and his testimony is not controverted in this regard.

As a general rule, a failure. by any one to assert his rights in a matter or proceeding affecting the same, of which he is not aware, is not a waiver of the right, and he is not estopped from afterward asserting and maintaining such rights.

In the case of *Griffin* v. *Nichols*, 51 Mich., 575–577, the facts were identically the same as in this case.    In the opinion it is said : ''He (the claimant of the homestead) was in the neighborhood, and might have been personally notified, but was not.    He had no actual knowledge of the levy, or of the proceedings under it ; and being wholly ignorant that there was any occasion for him to intervene, it would be going far to regard his omission as a forfeiture of his right.    If he had been fairly put upon his guard,— if he had been actually notified, and had then refrained from acting,— there would be room for other considerations.

''It may be taken as true in general that unless a person knows there is occasion for him to speak or act, his silence or passivity will not conclude him.''

The plaintiff having selected the premises sold, and

the value of the same being within the limit of the homestead exemption, the sale thereof was void and clouds the plaintiff's title, and he is not therefore estopped from instituting proceedings to remove this cloud because he made no objections to the sale. *Elias S. Kimball* v. *Salisbury supra*; *Griffin* v. *Nichols*, 51 Mich., 575 ; *Inhoff* v. *Lipe*, 162 Ill., 282 ; *Galligher* v. *Keller*, 30 N. W., 248.

The rule of *caveat emptor* applies to purchases at judicial sales, and the purchaser of said property took it subject to all the infirmities of the proceedings of sale.

It is ordered that the case be remanded, with directions to modify the decree so as to include the second and third pieces of real estate hereinbefore described in the homestead of appellant ; to declare the sale of said real estate void and to quiet the title of appellant to the same.    And it is further ordered that the appellant recover his costs.

MINER, J. I concur in the judgment, but insist that the court laid down the correct rule in *Kimball* v. *Lewis*, 17 Utah, 381.

BARTCH, C. J., dissents.