ALFRED BUNKER, Respondent, v. JOHN W. COONS AND CONSOLIDATED IMPLEMENT CO., Appellants.

Execution Sale — Land Claimed as Homestead — When Set Aside — Homestead — Abandonment — What Is Not — Actual Residence on Homestead Not Necessary — Sec. 1147 and Sub. 2 of Sec. 1154, R. S. 1898, Apply to Unmarried as Well as Married Men — Homestead Right — Can Not Be Waived in Advance — Public Policy.

*Execution Sale — Land Claimed as Homestead — When Set Aside.*

A sale of real estate on execution will be set aside where it appears that the execution defendant was the head of a family and provided for his aged mother from the proceeds of the land, and from his own labor; that such land was selected and used as a homestead; that notice of the claim of homestead was given the sheriff before sale; that a declaration of homestead was duly filed; that the land in question was all the land of the execution debtor, and worth not to exceed $1,000.

*Homestead — Abandonment — What Is Not.*

Temporary absence, of the homestead claimant, from his residence, while out of the State for a year or two at a time earning money to assist in providing for his family, does not constitute abandonment, when there is shown a *bona fide* intention to return, build a house, and reside on the land.

*Actual Residence on Homestead — Not Necessary.*

The fact that there is no dwelling on the land claimed as a homestead does not deprive claimant of his right, where it appears that he resided one-half mile therefrom, used the proceeds of the land in support of his family, and the value of the land was within the homestead limit fixed by statute.[1]

---

[1] *Kimball* v. *Salisbury,* 17 Utah, 381; *Kimball* v. *Salisbury,* 19 Utah, 161. *Approved.*

*Sec. 1147 and Sub. 2 of Sec. 1154 R. S. 1898 — Apply to Unmarried as Well as Married Men.*

> Under the provisions of Sec. 1147 and Sub. 2 of Sec. 1154 R. S. 1898, which apply to unmarried men the same as to a married man, a person is the head of a family if his mother resides with him and is under his care and maintenance, and being the head of a family, his actual residence on the land claimed as a homestead is not necessary to render it exempt from execution.[1]

*Homestead Right — Can not be Waived in Advance — Public Policy.*

> The homestead right, when vested in the head of a family, as guaranteed by the constitution and laws of this State, can not be waived by contract in advance of the occasion of asserting such right; such a contract of waiver being against public policy.

(Decided March 8, 1900.)

Appeal from the Sixth District Court, Sevier County, Hon. W. M. McCarty, *Judge.*

Action to set aside a sale on execution on the ground that plaintiff at the time of the levy and sale was the head of a family with whom he resided in the vicinity of the land, and that the proceeds thereof were and had been used for the support of himself and family; that the land constituted his homestead, and was exempt from levy and sale on execution. From a judgment for plaintiff, defendants appealed. *Affirmed.*

*W. F. Knox, Esq.,* and *C. W. Collins, Esq.,* for appellants.

Statutes which contain a provision that residence upon the land claimed as a homestead is necessary to make it the homestead of the person claiming the land as such, have generally been strictly construed; and, under a statute

---

[1] Idem.

containing such a provision, residence upon the land is absolutely necessary to give the land claimed as a homestead the qualities and characteristics of a homestead. Revised Statutes, Utah, 1898, Section 1154; *Gammett* v. *Storrs*, 49 Pac. (Utah), 642; *Kimball* v. *Salisbury*, 53 Pac. (Utah), 1037; *id.*, 56 Pac. (Utah), 973; *Greggs* v. *Bostwick*, 33 Cal., 228; *Prescott* v. *Prescott*, 45 Cal., 58; *Babcock* v. *Gibbs*, 52 Cal., 629; *Aucker* v. *Mc Coy*, 56 Cal., 524; *Dorne* v. *Howe*, 52 Cal., 631; *Pfister* v. *Eascey*, 68 Cal., 572; *Lubbock* v. *Mc Maun*, 82 Cal., 228; *Tromans* v. *Mahlman, et al.*, 27 Pac., 1094.

Mere intention to occupy land as a homestead does not give the land a homestead character, unless followed by actual occupancy, within a reasonable time. *Leonora State Bank* v. *Peak*, 44 Pac. (Kan.), 900.

At the time he signed the obligation to pay, being a promissory note, he also signed the paragraph waiving the exemption, and the waiver is based upon the same consideration upon which rests the liability to pay, the waiver should be as binding upon him as the obligation to pay. *Bowman* v. *Smiley*, 72 Am. Dec., 738.

*V. Rapp, Esq.* for respondent.

The constitution of the State provides for the selection of a homestead by the head of a family which may consist of one or more parcels of land, together with appurtenances and improvements amounting to $1,500 in value. Constitution, Art. 22, Sec. 1.

Where the value of the premises is less than the statutory limit, its character as a homestead is manifest by its use and occupation, and the statute does not contemplate that the judgment creditor should reside upon it in order to give it the character of a homestead. *Kimball* v. *Salisbury*, 53 Pac., 1040.

And when there is no dwelling house upon the land claimed, then the only occupancy which can be required by the law is such use thereof for the benefit of the family as is generally made by the owners of lands not occupied as dwelling . places. *Kimball* v. *Salisbury*, 56 Pac., 976.

No waiver of the homestead right could affect the interest of the dependent members of his family therein. *Kimball* v. *Salisbury*, 53 Pac., 1037; *Dye* v. *Mann*, 10 Mich., 297; *Beecher* v. *Baldy*, 7 Mich., 506.

MINER. J.

The plaintiff, Bunker, since 1890 was the owner of 30 acres of improved land without buildings thereon located at .Annabella, Sevier County, of a value of less than $1,000. The defendant, the Consolidated Implement Company, obtained judgment against the plaintiff upon a promissory note given in payment for a wagon in January, 1895, and an execution issued thereon, which said execution was placed in the hands of the defendant Coons, who levied the same on the land and sold said land to the defendant, the Implement Company, in July, 1898. This action was brought to set aside the sale on execution on the grounds that the plaintiff at the time of the levy and sale was the head of a family with whom he resided in the vicinity of the land, and that the proceeds thereof were and had been used for the support of himself and family; that the land constituted his homestead, and was exempt from levy and sale on execution; that he intended to build upon said land when able, and use the same as a homestead for himself and family; that this family consisted of himself and aged mother who was dependent upon him for support.

Upon a trial of the case before the court, without a jury, the court found all the issues in favor of the plaintiff, and ordered the sale set aside. The defendants appeal.

The appellants contend that the evidence was not sufficient to justify the findings, because, 1st. The plaintiff did not actually live upon the land; 2d. That plaintiff was not the head of a family; 3d. That plaintiff's mother was not dependent upon him for support; 4th. That plaintiff was not a resident of Utah; 5th. That plaintiff waived his homestead right by a clause in the note providing that he waived all right to exempt property by virtue of the homestead exemption laws, and that the court erred in refusing to admit such waiver contained in the note in evidence.

Plaintiff testified in substance, that he resided at Annabella, Sevier County, Utah, and had for many years; that for about ten years prior to the levying of the execution he had hired from his brother, a house about a half mile from the land in question, for a home for himself and mother, and that they had resided there to the time of the sale; that he lived there and supported his mother, and that she was dependent upon him for support; that he had paid the rent of the house; that he had rented the land in question on shares, and all the proceeds of the farm, consisting of lucern, oats, etc., were carried to his residence aforesaid for his mother's use during those years; that the lucern and grain raised was fed to cows and used up in her support; that the farm in question was worth less than $1,000, and that it was all the real estate he owned; that a few years previous he had purchased lumber to build a house on the land, but owing to misfortune he was obliged to sell the lumber, but that he always intended, when able, to build a residence upon

the land for himself and mother to live in as a home; that he had a team and wagon, and could make more by teaming and renting the farm on shares; that the product of the land was not sufficient to support himself and mother without additional labor on his part, so that for the last six years he had been teaming from Milford, Utah, to De La Mar, Nevada, whenever he could get work to do; that when out of work he went home to Annabella, and that he had no home except at Annabella, and that he paid the taxes on the farm and his poll tax in Annabella during the previous four years; that when at home he built ditches on the land and improved it by fencing; that during the time he was away teaming in Nevada, he sent his mother small sums of money at different times for her support; that he gave her orders on a store for goods and provisions and paid her bills; that he was 28 years old; that he was away from home freighting from 1894 to 1896, between Milford and De La Mar, Nevada, but was home a month of the time when his leg was broken; that most of the time during the last three years he had been away from home freighting, but came home several times during that period; that he had never voted in Nevada, although his name was signed to a registration blank; that he never took the oath nor authorized anyone to register him; that prior to the sale of the land notice was served upon the sheriff that the land was plaintiff's homestead.

Mrs. Bunker, the mother, aged 69 years, testified in substance, that the plaintiff lived in the house where she lived; that plaintiff supported her and sent her money at different times, and gave her the proceeds of the land to live upon, as well as orders on a store. That he was away from home a great deal freighting in Utah and Nevada, but was home part of the time; that plaintiff

said that he intended to keep this land for her support; that this was arranged between them.

Plaintiff's declaration of a homestead covering the land in question was recorded in Sevier County, and was received in evidence. Other evidence was given in corroboration and also in contradiction of plaintiff's testimony.

From the whole record we conclude that the testimony supported the findings and judgment. It clearly appears that the plaintiff was the head of a family and provided for the support of his aged mother from the proceeds of the land in question, and from his own labor; that such land was selected and used as a homestead and for the support of his family; that notice was served upon the sheriff before the sale that plaintiff claimed the land as a homestead, and a declaration of the selection of such land as a homestead, was duly recorded. .

The temporary absence of the plaintiff from his residence for a year or two at one time, when attending to his occupation or business out of the State, in order to earn money with which to assist in providing for his family, coupled with a *bona fide* intention to return and reside there and to build a house upon the land, and the fact that he made visits home during such absence, did not constitute an abandonment of the homestead right.

The testimony clearly shows that plaintiff's residence was at Annabella, Utah; that when he left that place to obtain work his *bona fide* intention was to return there, and he did so return; that he never voted in Nevada, or gained a residence there.

Sub-divs. 1 and 4, Sec. 806 Rev. Stat. 1898.

The fact that there was no dwelling house upon the homestead, and that plaintiff's mother resided with him one-half mile therefrom did not deprive him of his home-

stead right, when it appears that the proceeds of the land were used for the support of his family, and the value of the land was within the homestead limit fixed by statute.

These questions were carefully considered and decided by this court in favor of the contention of the plaintiff in *Kimball* v. *Salisbury*, 17 Utah, 381; 53 Pacific Rep., 1037; *Kimball* v. *Salisbury*, 19 Utah, 161; 56 Pac. Rep., 973.

It is also contended by appellant under Subd. 2 of Sec. 1154, Rev. Stat. 1898, that when the head of a family, as in this case, is not a married man, and claims a homestead, he must reside on the land claimed. This contention leads us to consider the provisions of the statute.

Sec. 1147, Rev. Stat. 1898, provides: "A homestead consisting of lands and appurtenances, which lands may be in one or more localities not exceeding in value with the appurtenances and improvements thereon the sum of fifteen hundred dollars for the head of the family, and the further sum of five hundred dollars for his wife, and two hundred and fifty dollars for each other member of his family, shall be exempt from judgment lien and from execution or forced sale, except as provided in this title."

Sec. 1154, Rev. Stat. 1898, so far as applicable, reads as follows: "Head of a family defined. The phrase, 'head of a family,' as used in this title includes within its meaning: * * * Every person who has residing on the premises with him or her and under his or her care and maintenance either his or her child, * * * mother, etc. * * *

In the case of *Kimball* v. *Salisbury*, 17 Utah, 381, 53 Pac. Rep., 1037, this court construed the meaning of the words "a homestead, consisting of lands and appurtenances, which land may be in one or more localities not exceeding the value of," etc., as contained in Sec. 11,

Ch. 71, Sess. Laws 1896, and re-enacted in Sec. 1154 Rev. Stat. 1898, as follows:

"The statute does not contemplate that the debtor's house or place of residence shall necessarily be located upon the property claimed as exempt; since several distinct pieces of land in the same or different localities or counties may constitute the homestead when selected, and it would not be reasonable to require that the debtor should have a dwelling house or residence on each piece of land going to make up his homestead, and also to require him to reside in each dwelling thereon, in order to protect such homestead rights from execution creditors."

In *Kimball* v. *Salisbury*, 19 Utah, 161; 56 Pac. Rep., 973, the same principle is announced.

Subd. 2 of Section 1154, above referred to, should be construed in harmony with Section 1147. Therefore the plaintiff would be the head of a family if his mother resided with him, and was under his care and maintenance, as shown by the facts in this case. Being the head of a family, his actual residence upon the land claimed as a homestead would not be necessary in order to render it exempt from execution. In such a case the rule applies to unmarried men who have charge of and are the head of a family the same as to a married man, or other person named in the statute. Manifestly the Legislature did not intend to lay down one rule governing heads of families consisting of married men, and other heads of families consisting of unmarried men, or other persons entitled to the homestead right, who might have greater responsibilities thrust upon them than the former class. It would be unreasonable to discriminate between persons of different classes, when the statute granting the right gives the homestead to all heads of families, to lands and appurtenances situated in one or more localities. So it would

not be reasonable to require a residence on the land when the head of the family owned one piece with no dwelling house thereon, but which is used for the support of the family, and not require such residence when he owns several pieces. The head of a family resides on the homestead, within the meaning of the statute, when he has the care and maintenance of a family who reside on or near the homestead, or some part of it, and who derive their support, in whole or in part, from the proceeds of such land used or intended, in good faith, as a homestead. In this view section 1154 is in harmony with section 1147.

The reasoning of this court, contained in *Kimball* v. *Salisbury*, 17 Utah, 381, 53 Pac. Rep., 1037, and *Kimball* v. *Salisbury*, 19 Utah, 161, 56 Pac. Rep., 973, is considered decisive of the question here presented.

Appellants also contend that the court erred in refusing to admit in evidence that part of the contract or note on which the judgment was rendered in the former action, as showing a waiver of plaintiff's exemption right to the land levied upon.

This clause reads as follows: "As to this debt we waive the right to exempt or claim as exempt any property, real or personal, we now own or may hereafter acquire, by virtue of any homestead or exemption law, state or federal, now in force or that may hereafter be enacted."

In Waples on Homesteads and Exemptions, p. 538, it is said:

"Rights of defense when life, liberty, or property are assailed can not be denied by courts because they have been relinquished anterior to the time of attack. Rights, not only natural but legal, which are given for defense, can not be abjured by the beneficiary so as to deprive

courts of the power to enforce them when subsequently pleaded. Remedies conferred by law can not be waived, by mere agreement not to claim them, so as to divest courts of the duty of according them if they be afterward claimed by one of the contracting parties."

So on page 546, he says: " No such act on the part of a husband or father, or of a wife or widow, or of any person, as might estop him or her personally from claiming a homestead right, can possibly debar others, who have rights therein, from their interest. Such rights of others render his own inviolable, since they are inseparable from his. What might be an act *in pais* operating as an estoppel, were he alone concerned, would not be such when the rights of those to be protected through him are involved. He would not be estopped from claiming homestead, though he had solemnly promised not to claim, and had received a consideration equivalent to the value of his right."

Following these principles it is generally held that the right to claim either real or personal property as the law exempts can not be waived by a general waiver in an executory contract. The taking away of the right to surrender future protection under exemption laws, is based upon public policy and the probable needs of the family, the improvidence of many people when making contracts to be performed in the future, the danger of the weak being overreached by the strong, the interest of the state in preventing pauperism, and the necessity of guarding the impecunious from their own want of caution when releasing rights before the occasion of asserting them arises.

In our opinion, the homstead right, when vested in the head of a family, as guaranteed by the constitution and laws of this State, is not a right to the husband or other head of the family for their protection alone, but it is as.

well bestowed upon those enumerated in the statute as members of his household and under his care, protection and maintenance while the statutory relation exists. It was intended to secure and protect the home as such, not only against creditors, but as against every act on the part of the head of the family not authorized by law, by which he could in advance barter away the right to the homestead, and thereby sacrifice the home as against himself and those constituting his family and under his care and maintenance. Therefore no waiver of the homestead right, as contained in the contract offered in evidence could affect the right of the head of the family, or those under his care and maintenance as members of his legal household. To uphold such a contract would be against public policy.

The doctrine announced in this opinion should not be construed as preventing the head of the family, who is the owner of land, from conveying or encumbering his homestead under the provisions of the statute. *Kimball* v. *Salisbury, supra*; *Blalock* v. *Elliott*, 59 Ga., 837; *Showers* v. *Robison*, 43 Mich., 502; Waples on Homesteads and Exemptions, 538, 540, 542, 545; *Kneettle* v. *Newcomb*, 22 N. Y., 249; 78 Am. Dec., 196; *Maloney* v. *Newton*, 85 Ind., 560; *People* v. *Phelps*, 72 Ill., 549; *Shelby* v. *Abbott*, 42 N. Y., 451; *Hooper* v. *Leal*, 10 How. Pr., 282; *Carter* v. *Carter*, 20 Fla., 558; *Recht* v. *Kelly*, 82 Ill., 147; *Curtis* v. *O'Brien, et al.*, 20 Ia., 376; *Maxwell* v. *Reed*, 7 Wis., 493; *Beecher* v. *Baldy*, 7 Mich., 488.

We find no reversible error in the record. The judgment of the district court is affirmed, with costs.

BASKIN, J., concurs.

BARTCH, C. J., concurs in affirming the judgment.