VOLKER-SCOWCROFT LUMBER COMPANY et al. v. VANCE et al.

No. 2028. Decided August 26, 1909 (103 Pac. 970).

1. MECHANICS' LIENS — ENFORCEMENT — RIGHT TO PERSONAL JUDGMENT UPON FAILURE OF LIEN. Prior to the Code, a personal judgment apart from the granting of equitable relief could not be rendered in an equitable action, but under the reformed procedure a personal judgment can be given in an action to foreclose a mechanic's lien when the lien fails, in view of Const. art. 8, section 19, providing that there shall be but one form of civil action, and law and equity may be administered in the same action, and Comp. Laws 1907, section 2961, providing that plaintiff may unite in the same complaint several causes of action, legal or equitable, or both, where they arose out of (1) the same transaction, or transactions connected with the same subject of action; or (2) contract, express or implied, etc. (Page 353.)

2. MECHANICS' LIENS—ENFORCEMENT—PERSONAL JUDGMENT AGAINST OWNER—FAILURE TO DEMAND. Under Comp. Laws 1907, section 2960, providing that the complaint must contain a demand of the relief which plaintiff claims, it is not error to refuse a personal judgment in mechanic's lien foreclosure proceedings, upon failure of the lien, where plaintiff did not demand a personal judgment in the complaint, and neither plaintiff, nor other lien claimants, in any manner asked for a personal judgment in any of the proceedings before the case was finally submitted; the only relief demanded being the awarding of a lien and sale of the premises and a deficiency judgment after sale. (Page 355.)

3. MECHANICS' LIENS—ENFORCEMENT—PERSONAL JUDGMENT AGAINST OWNER. Where the owner contracted for the construction of a building on her premises, the contractor agreeing to furnish all material and labor, and the owner to pay him the full contract price, and materialmen sold and delivered materials to the contractor to be used in the building, they were not entitled to a personal judgment against the owner in mechanic's lien foreclosure proceedings upon failure of the lien. (Page 356.)

4. PLEADING—JOINDER OF LEGAL AND EQUITABLE ACTIONS UNDER CODE—STATEMENT OF CAUSE OF ACTION. Whatever liability is to be given the reformed system of procedure permitting a union by plaintiff of legal and equitable primary rights and remedies in one suit, the complaint must contain all the necessary facts for both grounds for relief. (Page 356.)

5. HOMESTEAD — CONSTRUCTION OF STATUTE. Whatever liability should be given the construction of homestead exemption laws, they should not be so construed as to give the debtor the power by his own acts to deprive others of rights previously obtained in his property. (Page 359.)

6. HOMESTEAD — PROPERTY CONSTITUTING. Under the Constitution providing that a homestead may consist of one or more parcels of land, together with the appurtenances and improvements, and the statute providing that a homestead may consist of lands which may be in one or more localities, a dwelling house upon the land claimed to be exempt and a residence therein are not necessary to render a homestead exempt from execution, but an exemption may be claimed in any lands of the debtor, and a selection of a homestead made at any time before sale.[1] (Page 359.)

7. MECHANICS' LIENS—RIGHT TO LIEN. It appearing that only the two lots are necessary for the convenient use and occupation of the building constructed thereon, and for which the material was furnished, the materialmen would in no event be entitled to a mechanic's lien on any other lots of the owner, under Comp. Laws 1907, section 1379, giving such a lien upon so much of the land upon which the building is constructed as may be necessary for the convenient use and occupation of the building. (Page 359.)

8. MECHANICS' LIENS — RIGHT TO LIEN — HOMESTEAD. Where the owner of two lots had a dwelling erected thereon, if she selected and claimed the lots as her homestead, and the value of the lots with the improvements did not exceed the amount to

[1]Kimball v. Lewis, 17 Utah 381, 53 Pac. 1037; Kimball v. Salisbury, 19 Utah 161, 56 Pac. 973.

which she was entitled as a homestead exemption, persons furnishing materials for the dwelling were not entitled to a lien on the lots, unless when the material was furnished the owner owned other lands separate from the lots which, independently of them, constituted her homestead, and equalled the value of her homestead exemption. (Page 360.)

9. STIPULATIONS—EFFECT. If a stipulation offered in evidence was intended to be only evidential for the purpose alone of the particular proceeding then pending, and as to which it was made merely to save time, and for convenience to avoid calling witnesses, it should be regarded only as evidentiary, and not conclusive of the facts therein recited; but, if it was intended as a stipulation of ultimate facts in the cause, and applicable alike to all proceedings and trials thereof, it should be regarded as conclusive as to all such facts, unless upon sufficient grounds it be shown to the court why either or both of the parties ought to be relieved from its effects or be allowed to withdraw it. (Page 361.)

APPEAL from District Court, Second District; *Hon. J. A. Howell,* Judge.

Action by the Volker-Scowcroft Lumber Company against Mary Flinder Vance and another to foreclose a meterial-man's lien in which Halverson Bros., appeared, claiming a lien for material and labor.

Judgment of dismissal. Plaintiff and Halverson Bros. appealed.

REVERSED AND REMANDED.

Former Appeal, 32 Utah 74.

*Halverson & Pratt* for appellant.

*J. D. Skeen* for respondent.

APPELLANTS' POINTS.

To the effect that a subsequent selection of homestead cannot affect existing liens, we cite the following:   *Tuttle v.*

*Howe,* 14 Minn. 145; *Kelly v. Dill,* 23 Minn. 445; *Bowles v. Hoard,* 71 Mich. 150; *Smith v. Richards* (Idaho), 21 Pac. 419; *Robinson v. Wilson,* 15 Kan. 595; *Stevens v. Stevens,* 10 Allen 146; *Willard v. Masterson* (Ill.), 43 N. E. 771; *Henderson Lumber Co. v. Gottschalk,* 81 Cal. 64; *Mabry v. Harrison,* 44 Tex. 286; *Willis v. Matthews,* 46 Tex. 478; *Parsons v. Pearson* (Wash.), 36 Pac. 974.

STRAUP, C. J.

This is an action brought by the Volker-Scowcroft Lumber company to foreclose a materialman's lien. Halverson Bros. appeared in the action, and also claimed and exhibited a lien for materials furnished and labor performed. Among other things it is alleged in the answer by the defendant Vance that prior to and at the time of the letting of the contract for the construction of the buliding on her lots, and for which the materials were furnished and the labor performed by the lien claimants, she was, and still is, the head of a family, consisting of herself, her husband, and two children, that the lots upon which the building was constructed were her homestead, and that they, with the improvements thereon, did not exceed in value her homestead exemption. The court below sustained plaintiff's demurrer to the answer. The defendant Vance refusing to further plead, the court rendered a judgment in plaintiff's favor, awarded a lien on the real estate, and ordered a sale of the premises in satisfaction of the claims. On the defendant's appeal from that judgment (32 Utah 74, 88 Pac. 896, 125 Am. St. Rep. 828) we held that the court erred in sustaining the demurrer. We there held that because of the provisions of section 1, article 22, of the Constitution a homestead was not subject to a materialman's or mechanic's lien, in the absence of an express contract pledging the homestead. The judgment of the court below was therefore reversed, and the cause remanded. Thereafter the court tried the case upon the issues, and found that the defendant Vance was the owner of lots 5 and 6 upon which the building was constructed for which the materials were

furnished and the labor performed, and found that she also held the legal title to lots 7 to 12, inclusive, adjoining lots 5 and 6 in the same block, but that she had entered into a contract of sale to sell lots 7 to 12 to her son, and that she had received the contract price therefor, which was a reasonable price; "that the said lots 5 and 6 were acquired by the defendant Vance, with the other real estate described (lots 7 to 12) by purchase, and was at all times intended to be, and was used as, a home, and constitutes her homestead exemption"; that she entered into a contract with the defendant Irving Peterson to erect a building on lots 5 and 6 for an agreed price of $2175, which sum the defendant Vance paid to Peterson in accordance with the terms of her contract; that the said Irving Peterson purchased building materials of the plaintiff, the Volker-Scowcroft Lumber Company, of the value of $774.75, no part of which has been paid except the sum of $198.98, and that the said plaintiff filed and claimed a lien against said property for the balance of $575.07; that the said Peterson contracted with the lien claimants Halverson Bros. for the plumbing called for by the contract for the erection of said building, and there is due said lien claimants $179.75, for which they filed their notice of intention to claim a lien upon said property. The court further found that the defendant Vance was the head of a family consisting of herself, her husband, and a minor child, and that "all of the real estate hereinbefore described (lots 5 to 12), at the time plaintiffs furnished the materials and performed the labor, did not exceed $2250 in value (the amount of exemptions which she, under the statute, was entitled to claim in 'lands' as a homestead), and the said lots 5 and 6 do not now with the improvements exceed in value the sum of $2250, and that neither the said defendant, nor her husband, has any other homestead, and no member of said family has other property." As conclusions of law the court held that neither lien claimant "was entitled to a judgment of this court against the said defendant Vance," and that neither was entitled to a lien

or a sale of the premises in satisfaction of their indebtedness. A judgment was rendered accordingly, and the action dismissed. No service was had on the defendant Peterson.

The plaintiff and Halverson Bros. appeal. They first urge that, though the lien failed, they nevertheless were entitled to a personal judgment against the defendant Vance. On the other hand, it is contended by the respondent that, in an action to foreclose a mechanic's lien, when the lien fails the action also fails, in the absence of an express statutory provision authorizing the rendition of a judgment against the person personally liable. Prior to the Code a personal judgment apart from the granting of equitable relief could not be rendered in an action in equity. As to whether in an action to foreclose a mechanic's lien a personal judgment under our reformed system of procedure can be rendered against the person personally liable, when the lien fails, the authorities divide. (27 Cyc. 433; Boisot Mechanics' Liens, sec. 654.) By some it has been held that a personal judgment can be given if the lien failed because of a noncompliance with some provision of the statute essential to the claim of lien, but not if the lien was absolutely void, or if the claimant at the beginning was not entitled to lien; other courts, holding that a personal judgment may be rendered, make no such distinction. Among the authorities holding that under the reformed procedure no personal judgment can be given in the action to foreclose a mechanic's lien when the lien fails are the following: *Hildebrandt v. Savage,* 4 Wash. 524, 30 Pac. 643, 32 Pac. 109; *Jensen v. Brown,* 2 Colo. 694, and a number of later Colorado cases, until the amendment of a statute which expressly provided for a personal judgment "when the proceedings will not support a lien." Like rulings have been made by the Supreme Court of Illinois (*Green v. Sprague,* 120 Ill. 416, 11 N. E. 859), Oregon (*Ming Yue v. Coos Bay R. Co.,* 24 Or. 392, 33 Pac. 641), Iowa (*Loring v. Small,* 50

Iowa 271, 32 Am. Rep. 136), and the Federal Court (*Russell v. Hayner*, 130 Fed. 90, 64 C. C. A. 424), but in these jurisdictions the union of legal and equitable primary rights and remedies was held not permissible under the prescribed procedure. In such particular equity and law courts were there regarded as still separate and distinct. In the following cases, among others, it has been held that, under the reformed procedure, a personal judgment could be rendered against the person personally liable, though the lien failed, and though there was no express statute authorizing the rendition of a personal judgment in such case: *McCormack v. Phillips*, 4 Dak. 506, 34 N. W. 39; *Western Plumbing Co. v. Fried*, 33 Mont. 7, 81 Pac. 394, 114 Am. St. Rep. 799; *Wyman v. Quayle*, 9 Wyo. 326, 63 Pac. 988; *Brugman v. McGuire*, 32 Ark. 733; *Sullivan Timber Co. v. Brushagel*, 111 Ala. 114, 20 South. 498; *Smith v. Gill*, 37 Minn. 455, 35 N. W. 178; *Dollman v. Collier*, 92 Tenn. 660, 22 S. W. 741; *Ponti v. Eckels*, 129 Wis. 26, 108 N. W. 62; *Koepke v. Dyer*, 80 Mich. 311, 45 N. W. 143.

In *Haight v. Schuck*, 6 Kan. 192, it was held that a personal judgment could be rendered, because of a provision of the statute giving the lien claimant the right to a deficiency judgment. In all these cases in which it is held that a personal judgment may be rendered though the lien fails it of course is also held that the complaint, in connection with or in addition to the allegations for the foreclosure of a mechanics' lien, must also contain all the necessary facts constituting both ground for relief and all the necessary allegations of an action in *assumpsit*. In some it is held that the legal and equitable primary rights must be set forth in separate counts, and an actual demand made for both remedies in the prayer for judgment. We think the holding of the courts permitting a personal judgment in the action though the lien fails is supported by the greater weight of authority, and is in harmony with the intent and spirit of our Constitution (article 8, section 19) which provides "that there shall be but one form of civil action, and law and equity may be administered in the same ac-

tion," and our Code (section 2961, Comp. Laws 1907), which provides that "the plaintiff may unite in the same complaint several causes of action, legal or equitable, or both, where they arise out of: (1) The same transaction, or transactions connected with the same subject of action; or (2) contract express or implied, . . . but the causes of action so united . . . must be separately stated." By section 2960 it is also provided that the complaint "must contain . . . a demand of the relief which the plaintiff claims."

The ruling of the court not awarding a personal judgment against the respondent was, however, not erroneous for two reasons: (1) No demand was made in the complaint for a personal judgment, nor is it made to appear that the appellants, or either of them, in any manner asked for a personal judgment in any of the proceedings had before the case was finally submitted. The only relief demanded was the awarding of a lien and sale of the premises, and a deficiency judgment after sale. Nowhere is it made to appear that the action of the court was in any manner invoked for a personal judgment apart from the relief demanded in equity. (2) Upon the findings neither lien claimant was entitled to a personal judgment against the defendant Vance. It was alleged in the complaint that the plaintiff (the lumber company), "at the special instance and request of said defendants Peterson and Vance, sold and delivered to the defendants upon said premises" the materials in question. In its notice of intention to claim a lien it was averred by the lumber company, which notice was made a part of the complaint, that it "contracted with the said Irving Peterson to furnish the above-described lumber and building material at the above price, for the construction of said house, and that in pursuance of said contract the claimant (the lumber company) furnished said material to Irving Peterson and to L. H. Reader, his foreman, with the knowledge, consent, and at the instance of said Mary Flinders Vance." The defendant Vance in her answer denied that the material was sold

or delivered to her, or at her instance or request, and alleged that it was sold and delivered to Irving Peterson, with whom she had entered into a contract for the construction of the building, and that by the terms of which he agreed to furnish all the material and labor, and that she paid him the full contract price, amounting to $2175. Similar denials and allegations were made to the claim of Halverson Bros. These issues were, in substance, found by the court in favor of the defendant Vance. While complaint is made of the findings in many other particulars, no complaint is made nor is there any error assigned, in respect of the findings on these issues. An assignment is made that the court erred in holding, as a conclusion of law, that the appellants were "not entitled to a judgment against the defendant Vance for the amount claimed" by them. But that assignment is not well founded; for, upon the facts found by the court, and of which no complaint is made, the appellants were not entitled to a personal judgment against the defendant Vance. It may be further observed that it is doubtful whether the "exhibit of lien" of Halverson Bros. and their filed notice of intention to claim a lien, the only instruments in the record which can be considered in the nature of a complaint, contain sufficient averments to entitle them to a personal judgment against the defendant Vance. Whatever liberality is to be given our reformed system of procedure permitting a union or combination by a plaintiff of legal and equitable primary rights and remedies in one suit, it nevertheless is clear that the complaint must contain all the necessary facts constituting both grounds for relief.

It is further contended that there is no evidence to support the finding that the defendant Vance had sold, or had contracted to sell, to her son all of the lots except lots 5 and 6, or that he had paid her the reasonable value thereof. The defendant Vance testified that she sold all the lots except lots 5 and 6 to her son; that he had paid her nine hundred dollars for them, and that she had given him a

deed. When the lots were sold, or when the deed was
given, was not made to appear. A motion was made by
appellants to strike the testimony, on the ground that the
deed was the best evidence of the sale and conveyance. The
court overruled the motion, for the reason that no objection
was made when the testimony was offered, and that appel-
lants had cross-examined the witness at some length with
respect to the matter before the motion to strike was made.
Later, however, counsel for the defendant Vance consented
to the motion to strike the testimony, and thereupon the
court struck it. The testimony given by the defendant
Vance was all the evidence showing a sale of such lots to
her son. In this connection it is further claimed that the
finding that all the real estate (lots 5 to 12, inclusive) when
the material was furnished and the labor was performed
did not exceed $2250 in value is also not supported by the
evidence. There is evidence to show that lots 5 and 6 were
worth from $75 to $100 each, and that such lots, together
with the building constructed thereon, did not exceed in
value the sum of $2250. There is no direct evidence of the
value of the other lots which adjoined lots 5 and 6 in the
same block. It was alleged in the complaint that the de-
fendant Vance was the owner of lots 5 to 12, inclusive.
She in her answer, admitted that she was the owner of lots
5 and 6, but denied that she was the owner of lots 7 to
12. The court found that when the action was commenced
she was the owner of lots 5 and 6 only, and that she held
the legal title to lots 7 to 12; that lots 5 and 6 constituted
her homestead, and they, together with the building con-
structed thereon, did not exceed in value the sum of $2250.
After the testimony referred to was stricken, the evidence
remaining in the record shows that the respondent was the
owner of lots 5 to 12. The finding that she was the
owner of lots 5 and 6 only is not supported by the evi-
dence left in the record. Our Constitution provides that a
homestead "may consist of one or more parcels of land
together with the appurtenances and improvements thereon,"
and our statute that a homestead may consist of "lands

which may be in one or more localities." Under these provisions it has been held that "a dwelling house upon the land claimed to be exempt, and a residence therein, are not necessary in order to render a homestead exempt from execution," but that a homestead exemption can be claimed in any lands of the debtor, and that a selection of a homestead could be made at anytime before sale. (*Kimball v. Lewis,* 17 Utah. 381, 53 Pac. 1037; *Kimball v. Salisbury,* 19 Utah 161, 56 Pac. 973.)

The materiality of the respondent's ownership of lots 7 to 12, and the value thereof, is claimed to be in this: That the evidence shows that she was the owner of them, and that she and her family occupied and lived in a house situated on some of them as her home for some years prior to, and at the time of, the making of the contract to construct the house on lots 5 and 6 and the furnishing of the material and the performing of the labor thereon, and that she and her family continued to occupy and live in such house until the new house was about completed, when she and her family moved into the new house. From this it is argued that if lots 7 to 12, together with the improvements thereon, equaled or exceeded in value the sum of $2250, the amount which the respondent was entitled to claim exempt as a homestead, such property, so occupied by the respondent as her residence and home, must be regarded in law as her homestead, which could not be abandoned by her, and lots 5 and 6, with the new structure thereon, claimed exempt as a homestead to the prejudice of the lien claimants. In other words, it is urged that the exempt character of the homestead must be determined upon the facts as they existed when the material was furnished and the lien attached. If, when the material was furnished, lots 7 to 12, alone and independently of lots 5 and 6, constituted respondent's homestead, and if lots 7 to 12, together with the improvements thereon, equaled or exceeded in value the sum of $2250, then there is much force to appellants' contention that the respondent, after the house was constructed on lots 5 and 6, could not abandon her

former homestead, and claim and select lots 5 and 6, together with the building constructed thereon, as and for her homestead, to the prejudice of the lien claimants. Whatever liberality should be given the construction of our homestead exemption laws, they ought not to be so construed as to give the debtor the power by his own acts to deprive others of rights previously obtained in his property. If, however, when the material was furnished, all the lots (5 to 12), or whatever lots were owned by respondent, together with the improvements thereon, did not exceed in value the sum of $2250, then the respondent was entitled to claim the whole thereof exempt as her homestead when the material was furnished. , She was, in such case, entitled to claim lots 5 and 6, as well as lots 7 to 12; and, if after the house was constructed on lots 5 and 6, her "lands" in which she was so entitled to claim a homestead were increased in value so that they, together with the improvements thereon, exceeded in value the amount of her exemption, she then had the right to claim and select any part thereof as and for her homestead exemption, not exceeding the amount to which she was entitled. Such right is given her by the provisions of section 1161, Comp. Laws 1907, and by the prior decision of this court heretofore referred to, holding that the homestead could be selected at any time before sale. And if in such case lots 5 and 6 were so claimed and selected, and they, together with the improvements thereon, did not exceed in value the sum of $2250, then the appellants are not entitled to a lien on lots 5 and 6, for they but built upon and improved respondent's homestead. Appellants in no event are entitled to a lien on any lots except 5 and 6, for it is shown that only such lands are necessary for the convenient use and occupation of the building constructed thereon, and for which the material was furnished, and are the only lands to which the claimants' liens under the statute could attach. (Section 1379, Comp. Laws 1907.) If, on the other hand, when the material was furnished by appellants, the respondent owned the fee and

was possessed of lots 7 to 12, and they, together with the
improvements thereon, equaled or exceeded in value the
amount of the respondent's homestead exemption, and such
lots alone, and independently of lots 5 and 6, constituted
her homestead, then the appellants are entitled to a lien on
lots 5 and 6. The evidence does not show on which lots
the house in which the respondent lived before the new
house was constructed was situated, except that it was on
one or more of lots 7 to 12. The character of these lots,
or of respondent's occupancy of them is not shown. All
the lots, including 5 and 6, are each 25 feet in width, and
adjoin each other. So far as made to appear, lots 5 and
6, when appellants furnished the material, were occupied
by the respondent to the same extent that any of the lots
7 to 12, upon which the old house did not stand, was oc-
cupied by her. Assuming that the old house stood on lots
8 and 9, so far as disclosed by the record appellants would
be in the same position to claim a lien as is now claimed
by them had they furnished material to construct a house
on lots 11 and 12. They could in such case as strongly
urge that lots 5 to 10 constituted the respondent's homestead
as is now urged by them that lots 7 to 12 constituted her
homestead. If now all the lots, 5 to 12, or whatever lots
so adjoining each other were owned by the respondent, were,
when the material was furnished, regarded as one parcel
of land upon which the respondent and her family lived as
a home, and which constituted her homestead—that is, if
lots 5 and 6 were such a part thereof as much as any other
lot upon which the old house did not stand, and though
all the lots so owned by her, together with the improvements
thereon, exceeded in value the sum of $2250, and the re-
spondent claimed and selected lots 5 and 6 as her exemp-
tions, which, together with the improvements thereon, did
not exceed in value the amount of her exemptions which she
was entitled to claim—then the appellants are not en-
titled to a lien, for they again but improved and          8
built upon the respondent's homestead. In other
words, the respondent, having selected and claimed lots 5

and 6 as her homestead, if the value of such lots, together with the improvements thereon, do not exceed the sum of $2250, the appellants are not entitled to a lien, unless it be found that when the material was furnished the respondent was then the owner of other lands separate and apart from lots 5 and 6, and which, independently of them, constituted her homestead, and equalled or exceeded the value of her homestead exemption.

The issues in these respects were so loosely presented at the trial, and the evidence bearing upon them is so meager and indefinite, that we, on the record as presented, are unable to make or direct findings on them. The findings made by the court in such particulars are incomplete, and in some respects are not sufficiently responsive to the issues. and, in the particulars pointed out, are not supported by the evidence. If the findings of the court that all the lots when the material was furnished did not exceed in value the sum of $2250, or that lots 5 and 6 were all the lots owned by the respondent, were supported by the evidence, or if on the record we were clearly justified in assuming that all the lots were but one parcel of land upon which the respondent was living with her family as her home, of which lots 5 and 6 were a part—it being sufficiently shown that such lots were claimed and selected, and that they, with the improvements thereon, did not exceed in value the sum of $2250—we would affirm the judgment of the court below. But in the absence of such evidence, and such assumption not being clearly warranted because of the uncertainty of the evidence, we find it necessary to reverse the judgment, and remand the case for a new trial. It is so ordered, with costs to appellants.

In view of obviating another appeal on a new trial of the case we feel justified in calling attention to a ruling made relating to a stipulation found in the record, although no assignment is made with respect thereto. We advise that if the stipulation is again offered in evidence, the court ascertain and determine the intent and purpose of the stipulation, and as to whether it was a

stipulation as to facts intended to be only evidential for the purpose alone of the particular proceeding then pending, and in respect of which it was entered into, and merely to save time, and as a matter of convenience to avoid calling witnesses in such particular proceeding, or whether it was intended to be a stipulation of ultimate facts in the cause, and applicable alike to all proceedings and trials thereof. In the one instance the stipulation, if admitted, should be regarded only as being evidentiary, and not conclusive of the facts therein recited. In the other it should be regarded as being conclusive as to all such facts, unless, upon sufficient grounds, it be made to appear to the court why either or both of the parties ought to be relieved from the effects of the stipulation, or be allowed to withdraw or retract it.

FRICK and McCARTY, JJ., concur.